IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 5, 2005

## STATE OF TENNESSEE v. LORENZO MALONE

**Direct Appeal from the Criminal Court for Wilson County**
**No. 01-1404     John D. Wootten, Jr., Judge**

---

### No. M2003-02770-CCA-R3-CD - Filed June 27, 2005

---

A Wilson County jury convicted the defendant, Lorenzo Malone, for first degree felony murder under the theory of criminal responsibility. The trial court sentenced him to life with the possibility of parole. On appeal, he argues that the trial court erred by: (1) refusing to strike a potential juror for cause; (2) admitting photographs of the victim and a videotape into evidence; and (3) failing to grant a mistrial based upon impropriety in the State's closing argument. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which David H. Welles and James Curwood Witt, Jr., JJ., joined.

Kimberly Ann Parton, Knoxville, Tennessee, for the appellant, Lorenzo Malone.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Robert N. Hibbett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

In the late spring of 2001, the defendant and one of his codefendants, Harvey Baker, were shot at while sneaking through backyards and "scoping out" homes on Castle Heights Drive in Wilson County. Approximately three months later, on the night of August 2, the defendant returned to 908 Castle Heights Drive, along with his codefendants Baker and Richard Porter. Porter illuminated the back of the home with a flashlight and Baker opened the rear sliding glass door to the basement while the defendant held a shotgun. Upon entering the home, Baker took the shotgun from the defendant, and the three men climbed the stairs to the den.

Once inside the den, the defendant waited by a gun case while his codefendants went through the house to see if anybody was home. The codefendants found eighty-three year old Robbie Jones, the victim in this case, sleeping in her bedroom. The codefendants then used the butt of the shotgun to beat Ms. Jones to death in her room. The defendant listened to "her moan" while using a BB gun to break the glass gun case open and collect its contents. All three men then grabbed guns from the case and fled the way in which they came into the home. However, the codefendants subsequently reentered the home to collect a shell casing, which had fallen out of one of the guns, while the defendant stood in the driveway to keep a lookout for police.

On the morning of August 3, 2001, Lynn Wills found her mother, Ms. Jones, lying dead at the foot of her bed. Wills then dialed 911. Responding officers investigated the scene, interviewed neighbors, and turned over twenty-seven items to Hunter Greene at the Tennessee Bureau of Investigation for DNA testing.

Detective Scott Massey of the Lebanon Police Department received a call on August 5, 2001, from one of the neighbors who had been interviewed, Michelle Steverson. Steverson was the girlfriend of Baker and roommate of all three codefendants at 911-G Castle Heights drive. Detective Donnie Self was dispatched to conduct the interview of Steverson. The interview revealed the locations of all three codefendants.

Once the defendant was arrested, he gave a statement admitting his involvement in the crimes to Detectives Joe Jones and Chris Melvin. Executing a search warrant of his residence, the officers found a 1964 half dollar stolen from Ms. Jones' home, the shotgun used to beat Ms. Jones in the defendant's laundry room, and several of the stolen guns in the woods behind the residence.[1] In addition, the officers received consent from the defendant's sister, Marlena Leftrich, to search her residence. Inside this residence, the officers found a bag that the defendant had hid which contained a Colt gun box and the BB gun used to break open Ms. Jones' gun case. The officers were also granted consent to search the defendant's mother's home, where they found three additional stolen handguns.

Before trial, the voir dire examination revealed that a prospective juror was a former clerk at the District Attorney's office. However, the trial court questioned the potential juror and found her to be impartial. Based upon this finding, the trial court refused to strike the juror for cause, and the defendant used a peremptory strike. In response to the defendant's objection to the State's introduction of post-mortem photographs of the victim, the trial court conducted a jury-out hearing to consider the testimony of Dr. Bruce Levy, the medical examiner who performed the autopsy. Dr. Levy testified during the jury-out hearing that the autopsy photographs of the victim would assist in his testimony. Based upon this testimony, the trial court determined the photographs to be relevant and that their probative value substantially outweighed any potentially prejudicial effects.

---

[1] One of the stolen guns was not recovered, as the defendant admitted to selling it for $80.00.

At the conclusion of the State's evidence, the defendant declined to present any proof and proceeded to closing argument. At the conclusion of the closing arguments, the defense counsel moved for a mistrial based upon the allegedly improper scope of the closing argument. However, the trial court summarily denied the motion, and the jury convicted the defendant of first degree felony murder based upon the theory of criminal responsibility. The trial court then sentenced the defendant to life with the possibility of parole. He now brings this appeal.

## Analysis

### I. Dismissal of Juror

On appeal, the defendant argues that the trial court erred by refusing to dismiss for cause the potential juror who had clerked for the District Attorney's office approximately two years earlier. He contends that he was prejudiced by the alleged error because the trial court's refusal forced him to use a peremptory challenge which could have been used otherwise. The State argues that the trial court correctly determined that dismissing the potential juror for cause was unnecessary, or, in the alternative, was harmless error.

Rule 24(b) of the Tennessee Rules of Criminal Procedure governs challenges to potential jurors for cause and, in pertinent part, states, "Any party may challenge a prospective juror for cause if . . . there exists any ground for challenge for cause provided by law; [or] the prospective juror's exposure to potentially prejudicial information makes the person unacceptable as a juror." However, a trial court has wide discretion in ruling on the qualifications of jurors. State v. Kilburn, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989). The ultimate goal of voir dire is to ensure that jurors are competent, unbiased, and impartial, and the decision of how to conduct voir dire rests within the sound discretion of the trial court. State v. Howell, 868 S.W.2d 238, 247 (Tenn. 1993). A trial court's finding of impartiality may be overturned only for "manifest error." Patton v. Yount, 467 U.S. 1025, 1031 (1984); Howell, 868 S.W.2d at 248.

During the voir dire, the following colloquy ensued:

[**Defense Counsel**]: Would your experience in that office cause you to feel uncomfortable sitting as a juror in this particular case?

**Prospective Juror**: It probably would.

**The Court**: So ma'am, you heard my instructions earlier. You realize, of course, that it's up to the State of Tennessee to prove beyond a reasonable doubt every essential element of the crime charged; you understand that?

**Prospective Juror**: Yes.

**The Court**: And so are you saying that your association with [the

prosecution's] office might cause you a problem in evaluating the evidence in accordance with the law that I'm going to instruct you; is that what you're telling us?

**Prospective Juror**: I can do that.

**The Court**: You could do that, then?

**Prospective Juror**: Yes.

**The Court**: And if the State proves its case to your satisfaction beyond a reasonable doubt, you would do the right thing and return a verdict of guilty; is that right?

**Prospective Juror**: Uh-huh (affirmative).

**The Court**: If the State fails to, in your mind, prove its case beyond a reasonable doubt, you would return a verdict of not guilty; is that right?

**Prospective Juror**: Uh-huh (affirmative).

. . . .

**The Court**: [The prosecutor] is just one of the lawyers, all right? That's the real issue here, is that if you're so close or you think your judgment might be clouded by your relationship, even though in the past [you worked with the prosecutor], and only you know the answer to that, ma'am. So I know that's putting you on the spot, but that's something that I need to know, the Attorney General needs to know as well as [defense counsel]. So you think, is it that close?

**Prospective Juror**: No.

The trial court refused to strike the potential juror for cause based upon her foregoing responses. The defendant argues that the potential juror initially expressed that her former experience "probably would" make her feel uncomfortable. However, the State contends and the trial court found that the potential juror was capable of being an impartial juror. The trial court, rather than the appellate court, is clearly in the better position to observe the demeanor, attitude, and body language of a potential juror from which the court may conclude the potential juror's capability of impartiality. By appellate brief, the defense argues that, because of the trial court's interjecting line of questioning, she was unable to fully reveal the bias of the potential juror. However, the record reveals that defense counsel did further question the witness after the trial court's interjection and her questioning was not curtailed. As stated, the trial court's decision will be overturned only for manifest error. In this case, the defendant has not shown such error.

In addition, we note that the defendant has failed to show that the alleged error prejudiced his case. "[I]rrespective of whether the trial judge should have excluded the . . . challenged [juror] for cause, any error in this regard is harmless unless the jury who heard the case was not fair and impartial." Howell, 868 S.W.2d at 248 (citing State v. Thompson, 768 S.W.2d 239, 246 (Tenn. 1989)). The "failure to correctly exclude a juror for cause is grounds for reversal only if the defendant exhausts all of his peremptory challenges and an incompetent juror is forced upon him." Howell, 868 S.W.2d at 248. The defendant in the instant case has stated that he exhausted all his peremptory challenges. However, he has not indicated any specific juror that he would have challenged had he retained an additional peremptory challenge. Rather, the defendant broadly objected during the voir dire to the fact that the majority of the jury was female. Such objection may indicate a gender preference of the defendant, but it does not reveal that an incompetent jury or impartial juror was forced upon him. Accordingly, the issue is without merit.

## II. Evidentiary Issues

The defendant next claims that the trial court erred by admitting photographs of the victim and a videotape into evidence that were both prejudicial and irrelevant. The State argues that the photographs were relevant to the cause of death and illustrated and supplemented the testimony of Dr. Levy. The State has also argued that our review of the admissibility of the videotape is precluded by the defendant's failure to include a copy of the videotape in the appellate record. We agree with the State that the defendant has waived appellate review of the admissibility of the videotape by not including it in the record. The appellant, not the appellate courts, has the duty to provide a record on appeal that conveys "a fair, accurate, and complete account of what transpired [in the trial court] with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). In consequence, our review is limited to the admission of the photographs of the victim.

Admission of evidence is entrusted to the sound discretion of the trial court, whose ruling will not be overturned on appeal absent a showing of abuse of discretion. See State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997). An abuse of discretion is shown if the trial court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997). Before admitting a photograph into evidence, the trial court must first determine that the proffered photograph is relevant to an issue that the jury must decide. State v. Cole, 155 S.W.3d 885, 912 (Tenn. 2005); Tenn. R. Evid. 401. The trial court must then apply Rule 403 of the Tennessee Rules of Evidence, which explains that even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." The Tennessee Supreme Court has explained:

> Rule 403 is a rule of admissibility, and it places a heavy burden on the party seeking to exclude the evidence. Excluding relevant evidence under this rule is an extraordinary remedy that should be used sparingly and persons seeking to exclude otherwise admissible and relevant evidence have a significant burden of persuasion.

-5-

State v. James, 81 S.W.3d 751, 757-58 (Tenn. 2002) (internal quotations and citations omitted).

The defendant's argument is based upon his contention that the photographs of the victim are not relevant to any issue before the jury. First, he argues that the cause of death was admitted pre-trial and uncontested at trial. The defendant asserts that the photographs were, thus, irrelevant because his admissions removed the cause of death as a question before the jury. Next, he argues that his conviction was based upon the theory of criminal responsibility for first degree felony murder, which required no showing of premeditation or malice. Therefore, he asserts that the photographs were not relevant to show intent or state of mind.

Both of the defendant's arguments have recently been addressed by our supreme court in State v. Robinson, 146 S.W.3d 469 (Tenn. 2004). Like the defendant in the present case, the defendant in Robinson was convicted of murder based upon the theory of criminal responsibility. Detrimental to this defendant's argument, the supreme court in Robinson reversed this Court's decision that photographs in a case based upon criminal responsibility for first degree premeditated murder were admitted in error. The supreme court determined that "the prosecution's right to prove its case . . . may not be foreclosed by a defendant's characterization of the proof as undisputed or by a defendant's offer to stipulate or concede certain factual issues." Id. at 491. In regard to the defendant's argument that state of mind was not an issue before the jury, we note that photographs are often relevant to a defendant's state of mind. See, e.g., State v. Bush, 942 S.W.2d 489, 515 (Tenn. 1997) ("The photographs were relevant . . . to show the brutality of the attack and extent of force used against the victim, from which the jury could infer malice."); State v. Brown, 836 S.W.2d 530, 551 (Tenn. 1992) ("Each of these photographs is clearly relevant and admissible as evidence of the brutality of the attack and the extent of force used against the victim, from which the jury could infer malice, either express or implied."). However, the supreme court in Robinson determined that all areas in which photographs may be relevant must be considered before concluding that a defendant has met the "heavy burden" of establishing that a trial court abused its discretion. See Robinson, 146 S.W.3d at 490-91. For example, in Bush, the photographs were also found relevant because they supplemented the testimony of the medical examiner. Bush, 942 S.W.2d at 515. The supreme court concluded its analysis in Robinson of this issue by reiterating its holding in State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978) that "Tennessee courts follow a policy of liberality in the admission of photographs in both civil and criminal cases." Robinson, 146 S.W.3d at 492.

In the present case, the trial court carefully considered the defense objections and the testimony of the medical examiner, who indicated that the photographs would aid in his explanation of the cause and manner of death, in a jury-out hearing. Though the photographs may not have been relevant to the defendant's state of mind, the prosecution still has a right to prove its case. Dr. Levy hand selected the photographs to be used that would aid his testimony and illustrate the cause and manner of death. Before admitting the photographs, the trial court found them relevant and supplemental to the testimony of the medical examiner and applied Rule 403. Nothing in the record indicates that the trial court applied an incorrect legal standard or that the "admission of the photographs has affected the results of the trial." See Banks, 564 S.W.2d at 953. Consequently, we

conclude that the trial court did not abuse its discretion by admitting the photographs of the victim into evidence.

### III. Propriety of the State's Closing Argument

The defendant's final argument is that the State made improper remarks and exceeded the scope of the evidence during its closing argument. The State responds that the defendant's failure to contemporaneously object to any improprieties waived the issue on appeal. In the alternative, the State contends that, given the great weight of the evidence against the defendant, any errors in its closing argument would not have affected the verdict.

At the conclusion of the closing arguments, the defense moved for a mistrial based upon the scope of the prosecutor's closing argument. Specifically, the defendant argued that the State addressed points not in evidence, including that the victim "lived a very good life and had served the community as the Police Chief's wife." On appeal, the defendant adds the argument that the prosecutor improperly characterized him as the "lead sheep" of the group and referred to him and his codefendants as "yahoos." In regard to both of these arguments, when a prosecuting attorney makes objectionable statements during closing argument, but no contemporaneous objection is made, the complaining defendant is not entitled to relief on appeal unless the remarks constitute "plain error." See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(b); State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000). To determine whether the challenged remarks constitute plain error, we consider five factors: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is "necessary to do substantial justice." Smith, 24 S.W.3d at 282 (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). All five factors must be established before the existence of plain error will be recognized. Smith, 245 S.W.3d at 283. Ultimately, the error must have "had an unfair prejudicial impact which undermined the fundamental fairness of the trial." Adkisson, 899 S.W.2d at 642. Based upon the foregoing authority and the weight of the evidence against the defendant, we cannot conclude that the challenged remarks undermined the fairness or altered the outcome of the trial. Accordingly, we determine that this issue is without merit, as it does not constitute plain error.

### Conclusion

We affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE