**STATE of Tennessee, Appellee,**

v.

**Billy KILBURN, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

July 26, 1989.

Order on Petition to Rehear
Sept. 11, 1989.

---

Charles W. Burson, State Atty. Gen. & Reporter, Norma Crippen Ballard, Asst. State Atty. Gen., Nashville, David G. Hayes, Dist. Atty. Gen., Union City, Lyman Ingram, Asst. Dist. Atty. Gen., Dyersburg, for appellee.

Mark W. Fowler, District Public Defender, Periann Stark, Asst. Dist. Public Defender, Union City, for appellant.

OPINION

BYERS, Judge.

The defendant, Billy Kilburn, was convicted of first degree murder and employing a firearm in the commission of a felony. He was sentenced to life imprisonment for the murder conviction, enhanced by five years for employing a firearm in the commission of a felony. This sentence was made consecutive to a sentence from a Lake County conviction.

Following the denial of his motion for new trial and his amended motion for new trial the defendant appealed. Nine issues are raised in this appeal. The first three issues challenge the jury selection phase of the trial. The remaining issues on appeal include challenges to the following:

    1. Admission of a cartridge case without a proper showing of chain of custody;

    2. Allowing two lay witnesses to testify about the "freshness" of a mark on the victim's vehicle's windshield;

    3. Allowing a witness to testify about the alibi of another suspect;

    4. Refusal to allow certain proof regarding the intimate relationship between the victim's wife and a male suspect;

    5. Refusal to allow testimony by a witness regarding the purported confession of that witness's former boyfriend; and

    6. The sufficiency of the convicting evidence to support the jury's finding of guilt beyond a reasonable doubt.

The judgment of the trial court is reversed and the case is remanded for new trial.

In the early morning hours of September 14, 1986, the Tiptonville Chief of Police was contacted by the defendant and asked to send an ambulance to the home of Walter Lee Hayes. The defendant said Mr. Hayes had been found dead in the front yard.

When officers arrived at the victim's home he was found lying in the front yard, dead from a gunshot wound to the head. The defendant, along with Freida Hayes,

Kelly Patton, Gerald Reed, and several others were standing in the yard. Freida Hayes is the defendant's sister. She was married to the victim at the time of the murder. The defendant, Freida, and Kelly reported finding the victim when they returned to the house after visiting a bar in Hickman, Kentucky.

An investigation of the scene was conducted but the area was not secured. Several days after the murder further investigation of the scene was conducted and a .22 caliber shell casing was found near the side of the victim's home. A subsequent autopsy of the victim revealed he had been killed by a .22 caliber hyper-velocity round fired from a Marlin or Marlin product rifle.

The son of the victim testified he found a crack in the windshield of the victim's truck the morning after the murder. The truck was parked near where the body was found. The son and another witness testified the crack appeared to have been made by a projectile of some type striking the outside of the windshield.

Approximately ten months after the murder a .22 caliber Marlin Model 60 rifle was found by a fisherman in the mud along the Mississippi River. The serial number of this rifle matched the serial number of a gun purchased in 1985 by Kelly Patton. The defendant admitted he had been given a .22 caliber rifle by Kelly Patton. He offered various explanations for how he lost possession of the gun and how it ended up in the Mississippi river.

The shell casing and the rifle were examined by the Tennessee Bureau of Investigation crime laboratory. The shell casing was manufactured by C.C.I. The bullet removed from the victim was also examined by the T.B.I. lab. It was a .22 hollow-point-round possibly of a Winchester–Western manufacturer. It had been fired from a Marlin rifle but because of its condition it was impossible to determine if it was fired from the defendant's rifle.

Larry Boone, an inmate of the Lake County Jail, testified the defendant, who he met while incarcerated with him, admitted

killing the victim. Boone said the defendant described the marital problems between Freida and the victim and a fight that occurred on the evening of the murder. He also said the defendant told him the murder weapon was thrown into the river shortly after the killing.

William Larry Morgan testified the defendant told him before the murder that he intended to kill the victim because of Freida's marital problems and because the victim had physically abused Freida's children. After the murder the defendant told Morgan "they" had been planning the murder for four or five months.

The defendant offered the testimony of Mike Buckalew. Buckalew testified about a fight between the victim and the man Freida Hayes was purportedly having an intimate relationship with before and during her marriage to the victim. Other evidence was offered to show the relationship between Freida and this man.

Defendant's first three issues challenge the jury selection process as it related to three prospective jurors. He claims he was denied a fair and impartial jury, because: 1) the trial court improperly forced him to use a peremptory challenge to remove a prospective juror who was the prosecutor in a case pending in the same court, 2) the trial court allowed the state to challenge a prospective juror who said she had formed the conviction the defendant was innocent and would require proof to alter that perception, and 3) the trial court allowed a juror to be empaneled, despite her admission of having knowledge of the instant case and defendant's prior conviction for murder in a neighboring county.

As a preliminary matter it should be noted there is no proof in this record regarding the use of peremptory challenges by the defendant. The record shows which jurors were excluded, but does not reveal whether the challenge was made by the defendant or the state. Only when a defendant exhausts all his peremptory challenges and is forced to later accept an incompetent juror (propter defectum) can he complain about the jury composition. *State v. Coury,* 697 S.W.2d 373 (Tenn.Cr. App.1985). Absent proof on the use of peremptory challenges it is necessary for the defendant to show actual prejudice or bias (propter affectum) in order to prevail on his jury complaints. *See Toombs v.*

*State,* 197 Tenn. 229, 270 S.W.2d 649 (1954).

■ Generally, a juror is subject to challenge if he has a suit pending for trial at the same term of court as the present litigation. *See Durham v. State,* 182 Tenn. 577, 188 S.W.2d 555 (1945). The fundamental question presented by this issue is not whether the defendant was forced to use a peremptory challenge; but rather, was he denied the constitutional right to trial before an impartial jury. Tenn.Const. Art. I, sec. 9.

The trial court, in denying defendant's challenge of this juror for cause, said the juror did not have a case pending for trial in the same term of court. This finding is incorrect.

The juror in question was the prosecutor in a case scheduled for trial a few days after the defendant. Further, this defendant and the defendant in the case involving the juror were both represented by the Public Defender's office.

A prosecutor in a criminal case is a party. *Partin v. Henderson,* 686 S.W.2d 587 (Tenn.Cr.App.1984). Clearly, the case in question was pending in the same court.

The challenge of a juror under this rule may be either of the propter defectum category or the propter affectum category. If this challenge is considered as propter defectum the defendant fails without further consideration since he has failed to show he was forced to exhaust his peremptory challenges.

The defendant must also fail on this issue if the challenge is of the propter affectum class. The juror was excluded on a peremptory challenge, thus no bias can be shown.

■ The next prospective juror questioned by the defendant was challenged for cause, purportedly by the state. This juror said she had formed the opinion that the defendant was innocent. The defendant argues this juror was rehabilitated and could have been qualified.

A review of the record shows this juror had gone beyond mere formation of an opinion based on exposure to pre-trial information. It could easily be concluded this juror had formed a conviction about the defendant's innocence. It cannot be said the examination of this juror showed unequivocally that she could be impartial. Tenn.R.Crim.P. Rule 24(b)(2).

A trial court has wide discretion in ruling on the qualifications of a juror. This Court will not overturn such decisions absent a showing of an abuse of that discretion. *Burns v. State*, 591 S.W.2d 780 (Tenn.Cr. App.1979). There has been no showing of abuse as to this juror.

■ The final challenge to the jury attacks the trial court's failure to excuse, for cause, a juror who acknowledged having learned about this case from media reports and having heard of defendant's conviction of an unrelated murder in a nearby county. Conversely, the state says this juror was rehabilitated through follow-up examination.

If the only pre-trial information obtained by this juror had been about the instant case, this Court would be more inclined to agree with the state's position. *See State v. Prince*, 713 S.W.2d 914 (Tenn.Cr.App. 1986). Here, however, the juror also knew of at least part of the defendant's criminal history, his conviction of murder.

The attempts to rehabilitate this juror can best be characterized as difficult. In response to numerous questions about her ability to view the evidence impartially, the juror repeatedly replied "I think" or "I believe." It was only after lengthy questioning by the trial court and the prosecutor that this juror eventually replied unequivocally "yes" regarding her ability to overcome any preconceptions and render a fair and impartial determination.

The type of aggressive rehabilitation used with this juror is not favored. *See:* Tenn.R.Crim.P. Rule 24(b)(2) Comments; *Mothershed v. State*, 578 S.W.2d 96, 99 (Tenn.Cr.App.1978). The ability to rehabilitate a juror is rooted in the common sense acknowledgement that in this age of mass media it is quite likely jurors may have had some level of pre-trial exposure to the facts and issues involved in a case. "The mere exposure of jurors to newspaper publicity is not constitutional error." *Lackey v. State*, 578 S.W.2d 101 (Tenn.Cr.App.1978); *see also Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975).

The real question in determining a juror's acceptability is whether his exposure is to matters *"not* so prejudicial as to create a substantial risk that his judgment will be affected." Tenn.R.Crim.P. Rule 24(b)(2). In this case the juror in question had not only been exposed to information about the instant case, but was also aware of defendant's prior murder conviction. Information about a defendant's criminal history is generally considered highly prejudicial and is admitted at trial only under very limited circumstances. *See State v. Caffey*, 729 S.W.2d 266 (Tenn.Cr.App.1986).

Accordingly, it was error to refuse to excuse this juror for cause. In this Court's opinion the juror's pre-trial exposure to highly prejudicial information and the aggressive "rehabilitation" of this juror create a "substantial risk" that her judgment would be affected, thereby depriving this defendant of a fair and impartial jury. This case is therefore remanded for a new trial.

■ The defendant also claims the trial court erred in admitting into evidence a .22 caliber cartridge found in the victim's yard, near the body. He says the state failed to show a proper chain of custody. This issue is without merit.

The identity of tangible evidence need only be shown with reasonable assurance; all possibility of tampering or doubt of identity need not be eliminated. *Ritter v. State*, 3 Tenn.Cr.App. 372, 462 S.W.2d 247 (1970). The trial judge's decision on the sufficiency of proof as to chain of custody will not be overturned unless there is a clear mistake. *Wade v. State*, 529 S.W.2d 739 (Tenn.Cr.App.1975).

The proof in this case was sufficient to provide reasonable assurance of the identity and condition of the .22 caliber cartridge case in question. The trial court did not abuse its discretion in admitting this evidence.

■ The next issue challenges the testimony of two witnesses regarding their observations of the victim's truck. These two witnesses testified about their observations of a crack in the windshield of the victim's truck and their conclusions about the cause of the crack. Specifically, these witnesses said the windshield appeared to have been struck from the outside by some type of a projectile. They did not suggest what object had caused the damage.

Defendant says this testimony amounted to opinions by the witnesses who were not qualified as experts. He complains of the characterization of the crack as "fresh" and the observation the crack was caused by a "projectile."

A lay witness may offer opinions if they are based on the witness's own observations. *National Life & Accident Insur-*

*ance Co. v. Follett,* 168 Tenn. 647, 80 S.W.2d 92 (1935).

There was nothing in the testimony of either of the witnesses in question that went beyond their observations of the windshield. The opinions were based upon these observations and the conclusions drawn were simple and within the range of common experience. There was no error in admission of this testimony. Furthermore, even if this testimony had been impermissible, any error was harmless when viewed in light of the other evidence.

■ During the trial it became apparent the defendant was attempting to focus suspicion on Thomas Stevenson. The proof showed Mr. Stevenson had been intimately involved with the victim's wife. In response to this defense tactic the state questioned T.B.I. Agent Hughes on this point. Agent Hughes testified he investigated Mr. Stevenson's alibis and he found them to be credible. The defendant says this testimony was inadmissible because it was based on hearsay, i.e., the out-of-court statements of the people verifying Stevenson's alibi.

On close examination it is clear the Agent did not specifically recite any statements made by out-of-court declarants. Instead, he said he had investigated Stevenson's alibis and concluded they had merit.

Agent Hughes was actively involved in the investigation of this case. In addition to checking on Stevenson's alibis Agent Hughes spoke with the defendant several times, examined the physical evidence, and questioned other witnesses. The state contends the testimony in question was admissible because it was not being offered for the truth of the matter asserted, but rather to show why Agent Hughes focused his investigation on the defendant instead of Stevenson. *See State v. Miller,* 737 S.W.2d 556 (Tenn.Cr.App.1987).

The theory offered by the state treads a fine line in distinguishing hearsay from non-hearsay. The contention that this testimony was offered, not for the truth of the matter, but to explain the actions taken by the officer is belied by the prosecutor's response to defense counsel's original objection to this line of testimony. After defense counsel objected the prosecutor said:

> Your Honor, he has argued Thomas Stevenson committed the murder all night, and we have an officer here that's investigated. We feel that the....

Obviously, the prosecutor intended to prove Stevenson's alibis were true.

Where, as in this case, a defendant attempts to raise a third party defense, he is allowed to present proof tending to show that another had the motive and opportunity to have committed the offense. Where the proof is consistent with this hypothesis it is to be considered by the jury. *See Green v. State,* 154 Tenn. 26, 285 S.W. 554, 556 (1926).

If the state chooses to rebut a third party defense they must do so by competent evidence. To allow hearsay evidence for this purpose, particularly when the issue is crucial or primary to the defense, violates the basic principles underlying the hearsay rule. Even if the state were correct in its theory that this evidence was not being offered for the truth of the matter asserted, but rather to explain the officer's actions, some balancing test must be applied. If the probative value of allowing this hearsay is weighed against its prejudicial effect on this critical element of the defense, this Court must conclude the evidence should have been excluded and the state put to the test of proving this fact by direct testimony.

On a somewhat related issue the defendant says it was error to exclude certain sworn statements given to the authorities by the victim's wife and Thomas Stevenson. He claims these statements were probative of his third party defense implicating Stevenson as a suspect.

■ Some proof of the romantic relationship between Freida Hayes and Thomas Stevenson was introduced. However, the defendant also attempted to introduce evidence in the form of sworn statements given to the authorities by Freida Hayes and Thomas Stevenson. Both had received *Miranda* warnings and had executed waivers when these statements were given. The state objected to further proof in this area on the basis of relevancy. This objection was sustained.

Central to determination of this issue is the fact Freida Hayes had been indicted along with the defendant for this murder. Stevenson was indicted on a separate indictment for being an accessory before the fact of first degree murder relating to a separate plot to murder the victim.

Considering the defendant's third party defense these two statements appear to be most relevant. The statements expand on the proof allowed on this issue and include additional information which bolstered the

defense theory. Both statements were sworn, given voluntarily, and made after compliance with the parties' *Miranda* rights. Had either or both of these individuals been on trial for this murder these statements would have been admissible. *See State v. McAlister*, 751 S.W.2d 436 (Tenn.Cr.App.1987). It was error to exclude this evidence.

█ The defendant sought to elicit the testimony of Janice Turner regarding the purported confession of Jimmy Dale Evans. In testimony out of the presence of the jury Ms. Turner said her boyfriend, Jimmy Dale Evans, told her he shot the victim and threw the gun in the river. The shooting was allegedly motivated by a fight Evans had with the victim a few days before the murder.

It was revealed on cross-examination that Ms. Turner had been incarcerated with Freida Hayes. She said Freida had threatened her if she did not testify about Evan's confession.

In rebuttal, also out of the presence of the jury, the state called Jimmy Dale Evans. Mr. Evans denied telling Ms. Turner he had killed Hayes. He admitted having been involved in a fight with Hayes a few days before the shooting, but knew nothing about the murder. The trial court then refused to allow Turner to testify before the jury.

This Court finds no error in excluding this hearsay testimony. The declarant was available. There was a lack of trustworthy, independent corroboration of the statement. *See Smith v. State*, 587 S.W.2d 659 (Tenn.1979). Under these circumstances it was proper to exclude this statement.

Finally, the defendant challenges the sufficiency of the convicting evidence. In light of this Court's determination on numerous other issues it is unnecessary to review this issue at length. The evidence as presented was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. However, for the reasons stated herein this case is remanded for a new trial.

DAUGHTREY, J., and HERSCHEL P. FRANKS, Special Judge, concur.

## ORDER ON PETITION TO REHEAR

BYERS, Judge.

The state has filed a petition to rehear asserting this Court erroneously granted a new trial to the defendant because we found the trial judge should have granted a challenge for cause. The state correctly points out that unless the record shows a defendant has excused all available peremptory challenges they may not prevail on the denial of a challenge for cause.

In our original opinion, we said "there is no proof in the record regarding the use of peremptory challenges by the defendant."

This statement was in error. On June 2, 1989, this Court entered an order to enlarge the record to include therein the list of challenges to the jury, required to be kept by the trial judge by reason of Rule 24(c) of the Tennessee Rules of Criminal Procedure. These were filed on June 12, 1989. The challenge slips show the defendant exercised eight peremptory challenges.

Rule 24(d) provides a defendant is entitled to fifteen peremptory challenges if the offense is punishable by death. If the offense is punishable by imprisonment for more than one year, the defendant is entitled to eight peremptory challenges.

In this case, the state announced from the outset that they were not seeking the death penalty, and the defendant was permitted eight peremptory challenges.

The defendant exercised eight peremptory challenges prior to the juror in question being called. The record further reflects defense counsel addressed the trial judge on the matter of peremptory challenge and observed he had exhausted his challenges. The trial judge agreed counsel had done so. In this stance, the requirement of exhausting all of the peremptory challenge as a pre-condition to prevail on the seating of a juror who should have been excused is not applicable in this case. The defendant had in fact exhausted all the peremptory challenges available to him.

We reiterate that in our view of this record the juror in question was so far aware of the circumstances of this case and the past history of the defendant, that it cannot be said the defendant was afforded a fair and impartial jury to which an accused is constitutionally entitled.

We therefore deny the petition to rehear.

DAUGHTREY, J., and HERSCHEL P. FRANKS, Special Judge, concur.