ADOLPHO A. BIRCH, JR., J„
concurring and dissenting in part.
I write separately to express my extreme concern with the fact that of the eight peremptory strikes used by the State to remove potential jurors, all eight were used to remove African-American jurors. I agree with the majority, however, that the trial court’s failure to make specific findings on defendant’s Batson[1] objections, as well as the lack of a complete record, hinder meaningful appellate review. What is apparent from the record is that seven of the African-American jurors removed— Ms. Pirtle, Ms. Gibbs, Mr. Hudson, Mr. Woods, Ms. Ferguson, Ms. McKinnie and Ms. Heard — had indicated on their jury questionnaires that they had personal reservations about the death penalty.[2] I understand the prosecutor’s reluctance to *388 seat these jurors, although I also note that during voir dire each of them indicated a willingness to follow the law despite their personal beliefs. Since the jury questionnaires were not included in the record, it is impossible to determine whether the prosecution treated prospective jurors differently based on race. For instance, if we saw in the jury questionnaires that non-minority jurors who expressed reservations about the death penalty were not removed in the same manner that African-Americans were, we would have a basis for finding disparate treatment to support a Batson violation. Without such evidence, however, it is impossible to engage in meaningful review of the issue.
By way of example, the eighth African-American juror removed, Ms. Pruitt, was eliminated because, as the prosecutor stated, “she looked like she was going to cry” and “when she was going into the jury box she got teary-eyed again and was shaking her head no.” During voir dire of this particular juror — which was rather cursory — she indicated she did not have a problem sitting in judgment of others, she could do it in this particular case, and she could sign a death warrant. There is no evidence to support the prosecutor’s implication that this juror appeared emotionally distraught; the prosecutor’s bare assertion of such behavior is not evidence. The trial court did not make any findings of fact on the prosecutor’s stated reason other than to conclude, without analysis, that the stated reason was not racially motivated. I would caution trial counsel and courts when dealing with Batson objections to take care to develop the facts for the record, as it is otherwise impossible to determine whether disparate treatment indicative of impermissible discrimination occurred.
Despite my misgivings about the prosecution’s motives for eliminating these eight African-American jurors, and because of the inadequacy of the record and the paucity of trial court findings, I am unable to find actionable error. Accordingly, I concur in the conclusion of the majority that Huguely’s convictions should be affirmed.
As to the sentence of death, however, I respectfully dissent. I continue to adhere to my view that the comparative proportionality review protocol currently embraced by the majority is inadequate to shield defendants from the arbitrary and disproportionate imposition of the death penalty. See State v. Reid, 164 S.W.3d 286, 323-325 (Tenn.2005)(Birch, J., concurring and dissenting), and cases cited therein. Accordingly, I respectfully dissent from that portion of the majority opinion affirming the imposition of the death penalty in this case.
APPENDIX
(Excerpts from the Decision of the Court of Criminal Appeals)
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 2, 2004 Session
STATE OF TENNESSEE v. STEPHEN LYNN HUGUELEY
Direct Appeal from the Circuit Court for Hardeman County
No. 6665 Jon Kerry Blackwood, Judge
No. W2004-00057-CCA-R3-CD-Filed March 17, 2005
A Hardeman County jury found the defendant, Stephen Lynn Hugueley, guilty of first degree premeditated murder. Following a separate penalty phase, the jury found the presence of four statutory aggravating circumstances and that these ag-gravators outweighed any mitigating fac *389 tors. The jury subsequently imposed a sentence of death. On appeal, the defendant seeks review by this Court of both his conviction for first degree murder and his sentence of death. He presents the following issues for review: (1) whether the trial court erred in denying the defendant an individual and sequestered voir dire; (2) whether the trial court erred in denying the defendant’s objection to the State’s use of peremptory challenges based upon race and gender; (3) whether the trial court erred in denying the defendant’s motion to excuse a potential juror for cause; (4) whether the indictment failed to charge a capital offense; and (5) whether the trial court failed to apply meaningful standards to ensure constitutionally adequate proportionality review. Finding no error, we affirm the defendant’s conviction of first degree murder and sentence of death.
J.C. McLin, J., delivered the opinion of the court, in which, JeRRy L. Smith and RobeRT W. WedemeyeR. JJ., joined.
F. Michie Gibson, Jr. and T.J. Cross-Jones, Nashville, Tennessee, for the appellant, Stephen Lynn Hugueley.
Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Michael Markham, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; Terry D. Dycus, and Colin Campbell, Assistant District Attorneys General, for the appellee, State of Tennessee.
OPINION
[Deleted: Guilt Phase Evidence]
[Deleted: Sentencing Phase Evidence]

Procedural History Leading to this Court’s Review

After the sentence of death was imposed, the defendant indicated his desire to remove appointed counsel, waive his motion for new trial, and waive direct appeal of his conviction and sentence of death. Whereupon, the trial court granted the defendant’s request, and relieved counsel of further representation of the defendant. However, shortly thereafter, the defendant, proceeding pro se, filed a motion to appoint counsel and a motion for new trial. In support thereof, the defendant asserted that he waived his motion for new trial because he misunderstood the law. On October 9, 2003, the trial court granted the defendant’s motion and appointed F. Michie Gibson and T.J. Jones to represent the defendant at the motion for new trial and on appeal. A motion for new trial was filed on October 9, 2003.
On December 3, 2003, the trial court denied the defendant’s motion for new trial. A notice of appeal was filed by appointed counsel on December 29, 2003. A letter written by the defendant, dated December 18, 2003, was sent to the trial judge indicating the defendant’s desire to represent himself on appeal. On January 13, 2004, the trial court, in response to the defendant’s letter, conducted a hearing during which the defendant reiterated that he did not wish to appeal his sentence of death. The trial court determined that “any and all waivers heretofore made by the defendant have been knowing, intelligent and voluntary.”
On February 19, 2004, the record was filed with the Clerk of this Court and the matter was placed on this Court’s April 2004 docket. Although the defendant had knowingly waived his right to direct appeal of his conviction and sentence, the defendant proceeded to file a pro se motion with this Court, requesting an extension of time in which to submit his initial brief. This Court denied the motion by order entered March 24, 2004, acknowledging that briefing was not required in matters where a *390 defendant had waived his right to appeal. See State v. Stephen Lynn Hugueley, No. W2004-00057-CCA-R3-DD (Tenn.Crim.App., at Jackson, Mar. 24, 2004) (order). Notwithstanding, this Court, concerned as to the defendant’s objectives, provided the defendant the opportunity to withdraw his waiver of appeal and seek full appellate review. Id. On March 29, 2004, the defendant provided this Court with a revocation of his waiver of his right to appellate review and indicated his desire for full appellate review of his conviction and sentence. On May 12, 2004, this Court remanded the matter to the trial court for appointment of counsel. See id. The matter then proceeded in accordance with the Tennessee Rules of Appellate Procedure.
I. Guilt Phase Issues
The defendant presents three challenges relating to the guilt phase of his trial. All three challenges involve the composition and selection of the jury members.
A. Individual and Sequestered Voir Dire
Initially, the defendant complains that the trial court erred in denying his motion for individual and sequestered voir dire of the jury panel. He contends that the high amount of publicity in this case warranted individual and sequestered voir dire. Specifically, the defendant argues that he was unable to adequately and sufficiently voir dire the individual prospective jurors relating to their opinions and the information to which they had been exposed.
The ultimate goal of voir dire is to ensure that jurors are competent, unbiased and impartial. State v. Cazes, 875 S.W.2d 253, 262 (Tenn.1994); State v. Howell, 868 S.W.2d 238, 247 (Tenn.1993). The prevailing practice is to examine jurors collectively. State v. Austin, 87 S.W.3d 447, 471 (Tenn.2002); State v. Oody, 823 S.W.2d 554, 563 (Tenn.Crim.App.1991); State v. Hopper, 695 S.W.2d 530, 539 (Tenn.Crim.App.1985). “Individual voir dire is mandated only when there is a ‘significant possibility’ that a juror has been exposed to potentially prejudicial material.” Austin, 87 S.W.3d at 471-72 (quoting State v. Harris, 839 S.W.2d 54, 65 (Tenn.1992)). The mere fact that prospective jurors know something about a ease at the time of impaneling is not unusual. People do not live in isolation. Indeed, in this age of mass media it is quite likely jurors have some level of pre-trial exposure to the facts and issues involved in a case. State v. Kilburn, 782 S.W.2d 199, 203 (Tenn.Crim.App.1989). Mere exposure of jurors to publicity does not automatically constitute constitutional error. Id.; Murphy v. Florida, 421 U.S. 794, 800, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). The fact that a prospective juror knows something about a case is not sufficient to invoke individual voir dire, where the trial court takes the necessary steps to ensure that the accused receives a fair trial by a panel of impartial and indifferent jurors. Austin, 87 S.W.3d at 472. The real question in determining a juror’s acceptability is whether his exposure is to matters “not so prejudicial as to create a substantial risk that his or her judgment will be affected....” Tenn. R.Crim. P. 24(b)(2). The decision regarding the individual voir dire of prospective jurors remains within the sound discretion of the court, and will not be reversed on appeal absent a finding of “manifest error.” Howell, 868 S.W.2d at 247-48.
Prior to trial, the defendant filed a motion requesting individual voir dire for pretrial publicity. Although not included in the record, it appears that the trial court denied the motion. The motion was not renewed prior to the start of voir dire. *391 The prospective jurors were impaneled in the courtroom and collectively asked whether they had been exposed to potentially prejudicial material. Thirty-nine (39) prospective jurors admitted prior knowledge of the case from various sources, ranging from news media to hearsay statements of acquaintances. The trial court then asked those responding affirmatively to identify the source of the information and whether this knowledge had caused them to form an opinion of the case. If the prospective juror responded that the information had caused them to form an opinion, the trial court then made inquiry as to whether they would need additional proof to change their opinion. If the juror indicated that he or she would, the trial court excused the prospective juror from the venire. The trial court excused twenty-four (24) of the thirty-nine (39) prospective jurors based upon their responses that the prior exposure would influence their decision regarding the defendant’s guilt or innocence. Both the prosecution and the defense were permitted to further question the remaining jurors. The defense team requested voir dire of one prospective juror, Barry Watkins, out of the presence of the other jurors. The trial court granted this request. After the questioning of Watkins was completed, defense counsel stated, “I do not see anybody that I believe we need to do an individual hearing about other than Mr. Watkins.”
In State v. Porterfield, 746 S.W.2d 441 (Tenn.1988), our supreme court approved a method of jury selection very similar to that used by the trial judge in this case. ■ In Porterfield, the defense counsel argued that the trial court improperly limited the “questioning of prospective jurors with respect to exposure to pre-trial publicity.” Id. at 446. The trial judge had asked the jurors whether they had heard any inflammatory publicity which they could not set aside. Id. Every prospective juror who indicated they could not base their decision only on the evidence presented at trial was excused. Id. Also, during this questioning, the trial judge was careful to make sure nothing inflammatory or prejudicial was revealed about the defendant. Id. Upon review, our supreme court found no error. Consequently, the ruling in Porterfield stands for the proposition that if no prejudicial information is elicited during voir dire, and if the jurors assert they can disregard the pretrial publicity, there is no error in denying individual voir dire. Id. at 446-47.
In subsequent cases, our supreme court has applied Porterfield to find no reversible error by the trial court in denying individual, sequestered voir dire of prospective jurors when determining exposure to pretrial publicity. See Cazes, 875 S.W.2d at 262; Howell, 868 S.W.2d at 238. In Cazes, where the jurors stated that they could render a verdict based solely on the evidence presented at trial, our supreme court found no error, noting “a trial court’s findings of juror impartiality may be overturned only for ‘manifest error.’” 875 S.W.2d at 262 (citations omitted). In Howell, sixty-four percent (64%) of the prospective jurors had heard about the case. 868 S.W.2d at 247. The court refused individual voir dire for all prospective jurors, but indicated if a prospective juror remembered the specific content of any pretrial publicity, questions had to be submitted on an individual basis. Those prospective jurors who remembered details of the pretrial publicity indicated they could still be fair and render an impartial verdict. Id. at 248. As a result, our supreme court concluded that the trial court did not abuse its discretion. Id.
*392 In light of the holdings of Porterfield, Cazes, and Howell, we determine that the trial court acted within its discretion in denying individual voir dire. Prospective jurors who indicated they could not be impartial were excused for cause. No prejudicial information was released to the prospective jurors. All the prospective jurors who eventually heard the case indicated they could be fair and render an impartial verdict. Moreover, the defendant had the opportunity to further question prospective jurors and to request the individual, sequestered voir dire of the prospective jurors. Indeed, the defense did seek sequestered voir dire of one prospective juror, which was granted by the trial court. Therefore, defendant’s failure to further avail himself of this opportunity cannot be imputed as error of the trial court. Under these circumstances, we cannot conclude that the trial court violated either the spirit or the letter of Porterfield and its progeny.
The defendant has failed to demonstrate that he was not provided a fair trial by a panel of impartial and indifferent jurors. There is no indication that particular questions would have elicited specific information resulting in the removal of any of the jurors that sat on the final panel. Therefore, his argument is without merit.
B. [Deleted: Batson Challenges]
C. [Deleted: Barry Watkins]
II. Penalty Phase Issues
A. Indictment Fails to Charge Capital Offense
On appeal, the defendant asserts that the “Tennessee statutory sentencing scheme under which the State seeks to subject this Defendant to the penalties of death or life imprisonment without possibility of parole is unconstitutional under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, as well as Article I, Sections 8, 9, 16, and 17, Article II, Section 2, and Article XI, Section 8 of the Tennessee Constitution.” Essentially, he argues that Tennessee’s sentencing scheme fails to provide that aggravating circumstances be charged in the indictment before elevating the first degree murder penalty from life in prison to a sentence of death. In support of his argument, the defendant relies upon the decisions of the United States Supreme Court in Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
The defendant’s argument is based upon the premise that first degree murder is not a capital offense unless accompanied by aggravating factors. Specifically, the defendant complains that the indictment returned by the grand jury charges non-capital, first degree murder because the grand jury did not find any capital aggravating circumstances. Thus, the defendant alleges that to satisfy the requirements of Apprendi, the indictment must include language of the statutory aggravating circumstances to elevate the offense to capital murder. This argument has recently been rejected by our supreme court in State v. Holton, 126 S.W.3d 845 (Tenn.2004); see also State v. Berry, 141 S.W.3d 549, 558-62 (Tenn.2004). In Holton, our supreme court explained that “Apprendi applies only to enhancement factors used to impose a sentence above the statutory maximum” and that “the death penalty is within the statutory range of punishment prescribed for first degree murder by the Tennessee General Assembly....” Holton, 126 S.W.3d at 863 (citing State v. Delling *393 er, 79 S.W.3d 458, 466-67 (Tenn.2002)); see also State v. Odom, 137 S.W.3d 572, 590 (Tenn.2004). The court further emphasized that “Tennessee’s capital sentencing procedures require that a jury, not a judge, make the findings regarding the presence of aggravating circumstances and that the findings must be made beyond a reasonable doubt.” Odom, 137 S.W.3d at 590-91 (citing Holton, 126 S.W.3d at 864; see also Tenn.Code Ann. § 39-13-204(f)(1)(2003). The defendant is not entitled to relief on this issue.
B. Constitutionality of Proportionality Review
Next, the defendant complains that the statutorily mandated proportionality review is constitutionally inadequate due to the failure to promulgate meaningful standards by which to address the issue. Our supreme court has, on numerous occasions, upheld the appellate review process in death penalty cases. See State v. Reid, 91 S.W.3d 247, 313 (Tenn.2002); Cazes, 875 S.W.2d at 270-71; Harris, 839 S.W.2d at 77. Moreover, although comparative proportionality review acts as an additional safeguard against arbitrary or capricious sentencing, our supreme court has recognized that it is not constitutionally required. State v. Bland, 958 S.W.2d 651, 663 (Tenn.1997), cert. denied, 523 U.S. 1083, 118 S.Ct. 1536, 140 L.Ed.2d 686 (1998). Accordingly, the defendant is not entitled to relief as to this issue.
III. [Deleted: Review Pursuant to Tennessee Code Annotated Section 39-13-206]
[IV.] Conclusion
Having fully reviewed the record and the applicable authority, we affirm the defendant’s conviction of first degree murder. Additionally, in accordance with the mandate of Tennessee Code Annotated section 39-13-206(c)(l), and the principles adopted in prior decisions of the Tennessee Supreme Court, we conclude that the evidence supports the jury’s finding of the statutory aggravating circumstances involved in this case, and that the jury’s finding of aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt. Finally, a comparative proportionality review convinces us that the sentence of death is neither excessive, nor disproportionate to the penalty imposed in similar cases. Accordingly, we affirm the sentence of death imposed by the trial court.

. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

. As the majority notes, Defendant failed to object at trial to the exclusion of jurors Hudson, Gibbs and Pirtle, waiving any Batson claim as to these jurors.