# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 28, 2010 at Knoxville

## STATE OF TENNESSEE v. DERRICK LEMON GOODE

**Appeal from the Circuit Court for Bedford County**
**No. 16697     Robert Crigler, Judge**

---

**No. M2009-02259-CCA-R3-CD - Filed November 17, 2010**

---

A Bedford County Circuit Court jury convicted the defendant, Derrick Lemon Goode, of one count of the sale of .5 grams or more of cocaine, *see* T.C.A. § 39-17-417(a)(3) (2006), and one count of the delivery of .5 grams or more of cocaine, *see id.* § 39-17-417(a)(2). The trial court merged the convictions and imposed a sentence of 12 years' incarceration. In this appeal, the defendant contends that the trial court erred by failing to excuse a juror for cause, that the trial court erred by denying his pretrial request for material pursuant to Rule 26.2 of the Tennessee Rules of Criminal Procedure, that the State withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), that the trial court erred by failing to give a limiting instruction regarding the jury's use of the defendant's prior convictions, and that the evidence was insufficient to support his convictions. Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Emeterio R. "Terry" Hernando, Lewisburg, Tennessee, for the appellant, Derrick Lemon Goode.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsey Paduch Stempel, Assistant Attorney General; Charles Crawford, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

During a lengthy investigation into the illegal drug trade in Bedford County,

the 17th Judicial District Drug Task Force ("Task Force") focused its investigation on a "faction" of known and suspected drug dealers headed up by Bailey family matriarch Hazel Bailey. The faction included Ms. Bailey; her son, Jonathan "John John" Bailey; her daughter and the defendant's wife, Karen Bailey Goode; and the defendant. During the investigation, the Task Force utilized the services of a then-confidential informant, Jessica Berry. On April 24, 2008, at the behest of the Task Force, Ms. Berry telephoned a cellular telephone she knew belonged to Hazel Bailey and inquired of Jonathan Bailey whether he had any cocaine she could purchase. Mr. Bailey told her that he was in Murfreesboro but would provide her with cocaine when he returned to Bedford County.

Later that same day, Task Force Agent Shane George picked Ms. Berry up and asked her to telephone Hazel Bailey again and request $100 worth of crack cocaine. Ms. Berry complied, and the defendant answered the telephone and instructed Ms. Berry to go to a residence on West End Circle in Shelbyville. Agent George searched Ms. Berry's person, fitted her with an audio transmitter and digital recording device, and provided her with $100 in marked currency. He then drove her to a location near West End Circle and dropped her off. He watched her walk toward the rendevous point but lost sight of her before she got there.

Task Force Agent and Assistant Director Tim Miller maintained visual surveillance of Ms. Berry as she approached the residence. He observed the defendant exit the house, take money from Ms. Berry, enter the house via the garage, and then return to Ms. Berry and hand her a small object that Ms. Berry later described at trial as a small amount of crack cocaine "knotted up" in a plastic bag. Ms. Berry left the residence and met Agent George a short distance later. She gave the cocaine to Agent George, who had maintained audio surveillance during the transaction, and Agent George sent the material to the Tennessee Bureau of Investigation ("TBI") for forensic testing.

Testing by the TBI established that the material provided to Ms. Berry by the defendant was .7 grams of cocaine base, or crack cocaine.

The defendant denied participating in the drug transaction, claiming that Ms. Berry had lied about receiving cocaine from him and that Agent Miller was mistaken in his identification. The defendant maintained that he was at his residence in Bell Buckle at the time of the transaction and, therefore, could not have sold cocaine to Ms. Berry in Shelbyville.

From this proof, the jury convicted the defendant as charged. Following a sentencing hearing, the trial court merged the jury verdicts into a single judgment of conviction and imposed a sentence of 12 years' incarceration.

In this appeal as of right, the defendant alleges that the trial court erred by refusing to excuse a juror for cause, by denying his pretrial request for Rule 26.2, or *Jencks*, material, and by failing to provide an instruction limiting the jury's consideration of the defendant's prior convictions. The defendant also contends that the State withheld exculpatory evidence in violation of the standard pronounced in *Brady v. Maryland*, 373 U.S. 83 (1963), and that the evidence is insufficient to support his convictions. We will consider each claim in turn.

*I. Juror Challenge*

The defendant claims that the trial court erred by failing to excuse for cause potential juror Winstead (Juror Winstead) following Juror Winstead's admission that he believed "by a certain degree" that the defendant was guilty based upon the statements of the lawyers during voir dire. The State contends that the trial court did not err by refusing to excuse Juror Winstead for cause because, upon further questioning, the juror indicated that he could be impartial. We agree with the State.

"A court may discharge from service a grand or petit juror . . . for any other reasonable or proper cause, to be judged by the court. That a state of mind exists on the juror's part that will prevent the juror from acting impartially shall constitute such cause." T.C.A. § 22-1-105 (1994). Accordingly, the trial court retains "wide discretion in ruling on the qualifications of a juror," *State v. Howell*, 868 S.W.2d 238, 248 (Tenn. 1993) (citing *State v. Kilburn*, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989)), and the trial court's ruling in this regard will not be overturned absent a showing of an abuse of that discretion, *Burns v. State*, 591 S.W.2d 780, 782 (Tenn. Crim. App. 1979). "[I]rrespective of whether the trial judge should have excluded the . . . challenged jurors for cause, any error in this regard is harmless unless the jury who heard the case was not fair and impartial." *Howell*, 868 S.W.2d at 248 (citing *State v. Thompson*, 768 S.W.2d 239, 246 (Tenn. 1989)). When the defendant preserves the issue by exercising all of his peremptory challenges, "the failure to correctly exclude a juror for cause is grounds for reversal only if . . . an incompetent juror is forced upon him." *Howell*, 868 S.W.2d at 248 (citing *Ross v. Oklahoma*, 487 U.S. 81, 89 (1988); *State v. Jones*, 789 S.W.2d 545, 549 (Tenn. 1990)).

The following exchange occurred during voir dire:

[Defense Counsel:] Now, who among you believes that this defendant by a certain degree is already guilty?
If you think that this defendant is already guilty, by any degree, 10 percent, 20 percent, 30 percent can you please raise your right hand?

So you think that this defendant is already guilty by a certain percentage?

[Juror Winstead]: Basically from what I have heard from y'all.

Shortly after this exchange, the trial court called Juror Winstead to the bench, and the following exchange occurred:

The Court: There are no right or wrong answers up here. I think you were saying that based upon what the lawyers had said you had an idea he was guilty. There is a part of the jury instructions that what the lawyers say is not evidence.

[Juror Winstead]: All right.

The Court: Could you wait and hear the proof and then the jury instructions and decide based on that whether or not you feel like he is guilty or not?

[Juror Winstead]: Yeah.

The Court: Let me let the lawyers ask you some questions if they want to follow up.

[Prosecutor]: No questions.

The Court: Did you want to ask any questions to follow up?

[Defense Counsel]: No, Your Honor, as long as he says that he can stay and listen to the evidence.

[Juror Winstead]: All right.

Shortly thereafter, the defendant challenged Juror Winstead for cause. The trial court refused to excuse Juror Winstead, finding that Juror Winstead's response to questioning indicated that he could decide the case based solely on the evidence presented. The defendant did not use a peremptory challenge to remove Juror Winstead from the jury despite having challenges remaining at the time he made the challenge for cause. He later exhausted his peremptory challenges without striking Juror Winstead. The record clearly supports the conclusion of the trial court. Despite initially stating that he was inclined to believe the defendant was guilty, Juror Winstead stated that he understood that the statements of the lawyers were not evidence and that he could decide the case solely on the evidence. Under these circumstances, the trial court did not abuse its discretion by refusing to exclude Juror Winstead for cause.

## II. Jencks Material

The defendant next asserts that the trial court erred by refusing his pretrial request for the pretrial statements of the State's witnesses pursuant to Rule 26.2 of the Tennessee Rules of Criminal Procedure.[1] The State contends that the defendant has waived our consideration of this issue by failing to include citations to the record or to authorities in his brief. In the alternative, the State asserts that the defendant is not entitled to relief because Rule 26.2 provides for disclosure of witness statements only after a witness has testified. We agree with the State on both points.

The defendant argues that the trial court should have granted his motion for *Jencks* material and required the State to provide him with the requested materials "not less than forty eight (48) hours (or a reasonable period of time) before the witnesses testify at the trial." The defendant failed, however, to support this assertion with any argument detailing how the trial court's refusal prejudiced his case, much less any citation to appropriate authorities or to the record. In consequence, he has waived our consideration of this issue. *See* Tenn. R. App. P. 24(b); Tenn. Ct. Crim. App. R. 10(b).

Moreover, our supreme court "in interpreting Rule 26.2 has held that even in a capital case, the State is not required to produce witness statements until the conclusion of the witness's testimony on direct examination." *State v. Caughron*, 855 S.W.2d 526, 535 (Tenn. 1993) (citing *State v. Taylor*, 771 S.W.2d 387, 391 (1989)). As such, there is simply no support for the defendant's assertion that he was entitled to the witnesses's statements prior to the trial.

## III. Jury Instruction on Prior Convictions

The defendant next contends that the trial court erred by failing to provide an instruction to the jury that it could consider the defendant's prior convictions only for determining the defendant's credibility. The State asserts that the defendant has waived consideration of this issue by failing to support his claim with argument, citation to authorities, or citation to the record; by failing to lodge a contemporaneous objection to the jury instructions despite being given the opportunity to do so by the trial court; and by failing to include the issue in his motion for new trial. Again, we agree with the State.

---

[1] Rule 26.2 of the Tennessee Rules of Criminal Procedure had its genesis in the United States Supreme Court holding in *Jencks v. United States*, 353 U.S. 657 (1957), wherein the court ruled that a criminal defendant had the right to inspect prior statements or reports by government witnesses following direct examination for use in cross-examination.

The defendant's failure to include this issue in his motion for new trial precludes plenary appellate review of the claim. *See* Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in . . . jury instructions granted or refused . . . other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."). Moreover, in view of the defendant's failure to support his claim with argument, citation to appropriate authorities, or citations to the record, we will not exercise our discretion to review the issue for plain error. Tenn. R. App. P. 36(b) (stating that "an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial" where consideration of the error is "necessary to do substantial justice"); *see also* Tenn. Ct. Crim. App. R. 10(b) (noting that this court will treat as waived those issues unsupported by argument, citation to authorities, and citation to the record).

## *IV. Brady Violation*

The defendant claims that he is entitled to a new trial because the State failed to disclose prior to trial that Ms. Berry had been paid for her work as a confidential informant. Arguing that the evidence was exculpatory, the defendant asserts that the failure to disclose violated *Brady v. Maryland*, 373 U.S. 83 (1963). The State contends that there was no *Brady* violation because the State did not suppress any evidence favorable to the accused.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. "Evidence 'favorable to an accused' includes evidence deemed to be exculpatory in nature and evidence that could be used to impeach the [S]tate's witnesses." *Johnson v. State*, 38 S.W.3d 52, 55-56 (Tenn. 2001) (citing *State v. Walker*, 910 S.W.2d 381, 389 (Tenn. 1995); *State v. Copeland*, 983 S.W.2d 703, 706 (Tenn. Crim. App. 1998); *United States v. Bagley*, 473 U.S. 667, 676 (1985)).

To prove a *Brady* violation, a defendant must demonstrate:

(1) that he requested the information (unless the evidence is obviously exculpatory, in which case the [S]tate is bound to release the information whether requested or not),

(2) that the State suppressed the information,

-6-

(3) that the information was favorable to the defendant, and

(4) that the information was material.

*Johnson*, 38 S.W.3d at 56 (citing *State v. Edgin*, 902 S.W.2d 387, 390 (Tenn. 1995); *Walker*, 910 S.W.2d at 389). The evidence is deemed material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682.

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *Bagley*, 473 U.S. at 678). In the case of a delayed disclosure of exculpatory information, as opposed to a complete failure to disclose, the inquiry is whether the delay prevented the defense from effectively preparing for and presenting the defendant's case. *Caughron*, 855 S.W.2d at 548 (Tenn. 1993); *see Bagley*, 473 U.S. at 682 (failure to respond to *Brady* request may impair adversary process because defense "might abandon lines of independent investigation, defenses, or trial strategies that it otherwise would have pursued").

In this case, the defendant requested prior to trial that the State reveal the identity of the confidential informant and provide him with a copy of her criminal record as well as any agreements between the State and the informant regarding any criminal charges. The trial court denied his motion. The identity of the informant, Ms. Berry, was revealed sometime prior to the trial, and Ms. Berry appeared as a witness for the State. Both Ms. Berry and Agent George testified that Ms. Berry was recruited to become an informant after she was caught with drug paraphernalia. Both also candidly testified that Ms. Berry had been paid in her role as an informant and that the Task Force had gone so far as to provide Ms. Berry financial assistance to relocate to Florida after her identity was discovered. The record does not support the defendant's assertion that the State entered into these deals with Ms. Berry in exchange for her testimony in his trial. Moreover, even if it did, the defendant has failed to show that he was prejudiced by the delayed disclosure. The defendant thoroughly cross-examined Ms. Berry regarding the remuneration from the Task Force, and her role as a paid informant was plainly apparent from her testimony as well as Agent George's. Under these circumstances, the defendant is not entitled to relief on this issue.

## V. Sufficiency of the Evidence

Finally, the defendant challenges the sufficiency of the convicting evidence, claiming that the State failed to establish his identity as the perpetrator. The State contends that the evidence overwhelmingly supports the defendant's conviction. We agree with the State.

We review the defendant's claim mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654.

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

The defendant first claims that the evidence is insufficient because "[t]he identification testimony of deputy director Tim Miller and the confidential informant[] Jessica Berry were not sufficiently corroborated." We would remind the defendant that only the testimony of accomplices requires independent corroboration. *See, e.g.*, *State v. Bane*, 57 S.W.3d 411, 419 (Tenn. 2001).

The defendant also asserts that certain testimony at trial "shows that the DTF may have a video recording of the incident but they decided not to produce it in court because the identity of the alleged seller may not have been the defendant." This claim is completely baseless and unsupported by any evidence from the record. Furthermore, the absence of any video recording of the drug transaction was communicated to the jury, and the jury, as was its prerogative, nevertheless chose to accredit the testimony of the State's witnesses.

The defendant also contends that the evidence is insufficient because "[t]he confidential informant was not a credible witness because she was biased." As we have

stated repeatedly, our standard of review leaves the determination of witness credibility squarely within the purview of the jury as the trier of fact. *See Cabbage*, 571 S.W.2d 835.

In this case, the evidence adduced at trial established that the defendant sold .7 grams of crack cocaine to Ms. Berry on April 24, 2008. The defendant is not entitled to relief on this issue.

*Conclusion*

Because we discern no error in the judgment of the trial court, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE