# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 11, 2011

## STATE OF TENNESSEE v. JOSE HERMES GOMEZ

**Appeal from the Circuit Court for Bedford County**
**No. 16755      Robert Crigler, Judge**

---

**No. M2010-00182-CCA-R3-CD - Filed April 18, 2011**

---

Following a jury trial, the Defendant, Jose Hermes Gomez, was convicted of three counts of aggravated robbery, Class B felonies, and one count of aggravated burglary, a Class C felony. See Tenn. Code Ann. §§ 39-13-402(b), -14-403(b). The trial court sentenced him as a Range I, standard offender to ten years for each aggravated robbery conviction and five years for the aggravated burglary conviction. The trial court ordered that his five-year sentence and two of his ten-year sentences be served consecutively, for a total effective sentence of twenty-five years. In this direct appeal, the Defendant presents the following issues for our review: (1) The trial court erred when it denied two of the Defendant's challenges for cause to potential jurors; (2) The State presented insufficient evidence to convict the Defendant of three counts of aggravated robbery; and (3) The trial court erred when it imposed consecutive sentences. After our review, we affirm the judgments of the trial court and remand solely for the entry of corrected judgment forms for each of the Defendant's aggravated robbery convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed, Remanded**

DAVID H. WELLES, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Hershell Koger, Pulaski, Tennessee, for the appellant, Jose Hermes Gomez.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Charles Crawford, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

This appeal arises from a home invasion and robbery that occurred on January 20, 2009, when three children were home alone because their school system was closed due to snow. A Bedford County grand jury returned an indictment charging the Defendant with one count of aggravated burglary and three counts of aggravated robbery—one naming each child. The Defendant's trial was conducted on September 17, 2009.

C.C., who was fifteen years old at the time of the trial, testified that she and her two brothers, ages ten and seven, were at their Shelbyville home on January 20, 2009. The children were watching television when they heard a knock on the door. C.C., who was expecting delivery of a book that she had ordered, answered the door. She left the chain on the door when she opened it and saw a man holding a gun. The man ordered her to open the door. C.C. opened the door and ran to the couch to sit with her brothers. The man with the gun entered and asked her, "[W]here's the jewerly[?]" Another man, whom she later realized was someone who had attended her mother's birthday party in December, entered about a minute later. C.C. identified the second intruder as the Defendant.

C.C. recalled that the first intruder kept the children at gunpoint, while the Defendant searched throughout the house. C.C. testified that the Defendant went into her mother's bedroom, her brothers' bedroom, her bedroom, and the bathrooms. She said that the Defendant took a video camera from her room, a fake gun from her brothers' room, and a video camera from the computer. The intruder with the gun demanded that the children give him the jewelry they were wearing, and they complied. The man with the gun also took C.C.'s cellphone.

C.C. recalled that, as the two men were getting ready to leave the house, the man with the gun instructed her and her brothers to hide in the bathroom. She testified that, when she heard the door slam, she came out of the bathroom and ran to look outside. She saw that the men left in a car that was "a bluish-green color." C.C. then called the police.

C.C. testified that she later found a picture, taken at her mother's birthday party, that included the Defendant, and she emailed it to the police. She also recalled that, several days after the robbery, she and her father went to her mother's work-place and, in the parking lot, she saw the bluish-green car in which the two men had fled. She took photographs of the car and sent those to the police as well.

C.C. testified that she was afraid when the two men were in her house. She said that her brothers appeared to be afraid also. She recalled that she and her seven-year-old brother cried.

Ten-year-old A.C. testified that, one day when he had a "snow day," he was watching television and playing his Gameboy when he heard a knock on the door. He said that his sister answered the door and that a man with a gun came in their house. A.C. stated that a second man, whom he identified as the Defendant, then entered their house. A.C. recalled that, when the Defendant came into the house, he went to A.C.'s mother's bedroom. When the Defendant came back into the living room, A.C. saw that he had a video camera box. A.C. also testified that the man with the gun demanded that he remove his jewelry and that his sister helped him comply with the request. He stated that the children were ordered to go into the bathroom and that they came out when they heard the door close. He said that he saw the car and that it was "greenish." A.C. testified that he was scared when the men were in his house and that he held onto his sister's hand.

Blanco Flores, the children's mother, testified that she invited Roseanna,[1] one of her co-workers, to her birthday party. Ms. Flores recalled that Roseanna brought her companion to the party, and she identified the Defendant as the man who accompanied Roseanna. Ms. Flores also testified that she sold jewelry and had previously sold pieces to Roseanna. Finally, Ms. Flores said that she never gave anyone permission to enter her house on January 20, 2009.

Camerino Castillo, the children's father, also testified that he did not give anyone permission to enter his house on January 20, 2009.

Detective Brian Crews, of the Shelbyville Police Department, testified that he obtained Roseanna's address from her employer and found out that her apartment was rented to someone named Jose Gomez. He then checked for driver's licenses with the name Jose Gomez and found a driver's license photograph that matched the individual C.C. identified in the picture from her mother's party.

Detective Crews interviewed the Defendant, with the assistance of an interpreter, after he was arrested. He said that, after waiving his rights, the Defendant eventually admitted to being at the victims' residence on January 20, 2009. However, the Defendant claimed that he only went to the house because Wilson Palacio, his co-defendant, was hoping that the victims' father could give him a job. Detective Crews testified that the Defendant never admitted to stealing anything from the victims' residence, however, he did offer to pay for

---

[1] Ms. Flores did not remember her co-worker's last name.

the items that were taken. Detective Crews also testified that he requested pawn shop records be searched for the Defendant's name and that he ultimately found some of the victims' stolen jewelry at a pawn shop in Nashville.

The jury convicted the Defendant of one count of aggravated burglary and three counts of aggravated robbery. The trial court sentenced the Defendant, as a Range I, standard offender, to five years for his aggravated burglary conviction and ten years for each of his three aggravated robbery convictions. The trial court ordered that two of his convictions for aggravated robbery run consecutively to his conviction for aggravated burglary, for a total effective sentence of twenty-five years. The Defendant now appeals.

**Analysis**

In this direct appeal, the Defendant presents the following issues for our review: (1) The trial court erred when it denied two of the Defendant's challenges for cause to potential jurors; (2) The State presented insufficient evidence to convict the Defendant of three counts of aggravated robbery; and (3) The trial court erred when it imposed consecutive sentences.

**I. Jury Challenges for Cause**

The Defendant argues that the trial court erred when it denied his challenges for cause to perspective jurors Smith and Crowell. Both individuals served as jury members at the Defendant's trial.

Our supreme court has stated that "our Constitution guarantees every defendant a trial by a jury free of a disqualification propter affectum; that is, a disqualification on account of some bias or partiality toward one side or the other of the litigation." Toombs v. State, 270 S.W.2d 649, 650 (Tenn. 1954); see Tenn. Const. art. I, § 9 (guaranteeing criminal defendants a trial "by an impartial jury"). "The right of challenge for cause was designed to exclude from the jury triers whose bias or prejudice rendered them unfit, and peremptory challenge was intended to exclude those suspected of bias or prejudice." Manning v. State, 292 S.W. 451, 455 (Tenn. 1927). "A trial court has wide discretion in ruling on the qualifications of a juror. This Court will not overturn such decisions absent a showing of an abuse of that discretion." State v. Kilburn, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989).

**A. Juror Smith**

During jury voir dire, Perspective Juror Smith informed the trial court that one of the State's potential witnesses, Detective Charles Merlo, had coached her child's soccer team. The following then transpired:

> [Defense Counsel]: . . . And my question would be, because you got
> that prior relationship with Detective Merlo, are you going to be naturally

inclined to, I guess, believe him, all other things being considered equal, because of the prior relationship that you have with him or that you've talked with him before?

[Perspective Juror Smith]: I think I would be fair either way. You know, I mean, I would listen to him, but I don't think it would—it's a hard—I mean, I don't think he would—he would have to prove himself, you know. I mean—

[Defense Counsel]: Do you have an opinion—

[Perspective Juror Smith]: I believe he always tells the truth.

[Defense Counsel]: That was my next question. Do you have an opinion now as to whether he's a credible person before you come in here?

[Perspective Juror Smith]: I do believe he is, yes.

. . . .

[Trial Court]: Okay. But even considering that, do you believe you could be a fair and impartial juror?

[Perspective Juror Smith]: Yes, sir.

The Defendant challenged Perspective Juror Smith for cause because of her prior relationship with Detective Merlo, and the trial court denied the challenge, noting, "[T]he parting thing was she said she could be fair." Upon our review, we cannot conclude that the trial court abused its discretion. Although she said that she believed Detective Merlo "always tells the truth," Juror Smith did state that she could be a fair and impartial juror. She also said that she thought she "would be fair either way." Additionally, it is worth noting that Detective Merlo did not actually testify at the Defendant's trial. The Defendant is not entitled to relief on this issue.

### B. Juror Crowell

While defense counsel was asking potential jury members if they, or someone close to them, had been victims of a crime, Perspective Juror Crowell stated that he had owned a convenience store and that his mother had been robbed while working there. The following colloquy then occurred:

[Perspective Juror Crowell]: On the night shift my mother got robbed, it was an armed robbery.

[Defense Counsel]: Well, so I guess you would maybe fall into that category, too. You think that your history in that kind of business, kind of what you're dealing with today, you think that will impact your ability to be impartial, an impartial juror today?

[Perspective Juror Crowell]: That, I don't know.

[Defense Counsel]: You don't know. . . . But my question is, say, if we were dealing with the DUI case, would you have the same concern about being impartial as a juror in the DUI case as you do in this type of case?

[Perspective Juror Crowell]: I don't think I'd have as much (inaudible).

[Defense Counsel]: So your concern with your impartiality is based on the type of charges we're dealing with and the type of experience that you have and your family's had?

[Perspective Juror Crowell]: That could have a lot to do with it.

[Defense Counsel]: All right. Can you tell the [c]ourt unequivocally that you could be an impartial juror in this trial?

[Perspective Juror Crowell]: I can't say that unequivocally.

[Defense Counsel]: And you have served on a jury trial before, right?

[Perspective Juror Crowell]: Two, actually, one about eight years ago.

[Defense Counsel]: So you understand what it means to be a juror?

[Perspective Juror Crowell]: Right.

[Defense Counsel]: You understand the process of listening to witnesses and making the decisions?

[Perspective Juror Crowell]: Yes.

Later, as the attorneys and trial court asked Perspective Juror Crowell more questions at the bench, the following transpired:

[Trial Court]: Have you formed any opinion about this defendant's guilt in this case?

[Perspective Juror Crowell]: No, I haven't.

[Trial Court]: Okay. Do you feel like you could be a fair and impartial juror in this case?

[Perspective Juror Crowell]: I don't know. I'd try to be. I'd try to be.

[Trial Court]: . . . I mean, you wouldn't find him guilty just because your mother got robbed?

[Perspective Juror Crowell]: No. Not because she was robbed, no.

. . . .

[Trial Court]: . . . Do you think you could be fair and impartial, I mean, if—

[Perspective Juror Crowell]: I'd try to.

[Trial Court]: —if the State doesn't prove it beyond a reasonable doubt, could you find him not guilty?

[Perspective Juror Crowell]: I could find him not guilty, you know if he couldn't—

[Trial Court]: If the State didn't prove him—

[Perspective Juror Crowell]: Yeah. Well, I guess everybody that has been offended has some kind of a—

[Trial Court]: Everybody's got biases and opinions. I mean, we wouldn't be human beings if we weren't. Sometimes these things get kind of far afield, you know, in jury selection. Nobody's saying, you know, do you

-7-

approve of stealing or are you for it or against it, but it's more, can you just decide whether the defendant is guilty of what he's charged with or not.

[Perspective Juror Crowell]: I'd try to. I'd try.

As Juror Crowell was not able to unequivocally say he could be impartial, we conclude that the trial court should have granted the Defendant's challenge for cause. See State v. Shepherd, 862 S.W.2d 557, 569 (Tenn. Crim. App. 1992) ("[W]e do not conclude that the juror who had 'kind of' formed an opinion as to guilt evinced an unequivocal declaration of impartiality when she stated that she would 'try' to base her decision solely upon the evidence and indicated that she 'believe[d]' she could give the defendant a fair and impartial trial."). However, we conclude that the Defendant has not properly preserved this issue for review because he did not use one of his available peremptory challenges to remove Perspective Juror Crowell.

"It is a long-settled principle that a defendant who disagrees with a trial court's ruling on for cause challenges must, in order to preserve the claim that the ruling deprived him of a fair trial, exercise peremptory challenges to remove the jurors." State v. Howell, 868 S.W.2d 238, 248 (Tenn. 1993); see also State v. Reid, 91 S.W.3d 247, 291 (Tenn. 2002) ("It is only where a defendant exhausts all of his peremptory challenges and is thereafter forced to accept an incompetent juror can a complaint about the jury selection process have merit."); Hale v. State, 281 S.W.2d 51, 56 (Tenn. 1955) ("A further complaint under these two assignments is that the Court overruled his challenge for cause of the five jurors whom defendant, as above stated, accepted. We see no merit in that complaint because, as appears from the above statement, defendant having at that time eight peremptory challenges which he could have exercised but did not do so."); State v. Thompson, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000) ("Tennessee law requires that before a defendant will be heard to complain that a trial court has abused its discretion in failing to remove a potential juror for cause, the defendant must have exercised a peremptory challenge to remove the potential juror, must have exhausted all his peremptory challenges, and must have been forced to accept an incompetent juror.").

In the instant case, the trial court denied the Defendant's challenges to jurors Smith and Crowell before he had used any of his nine peremptory challenges and, thus, he could have used one of them on Juror Crowell. However, instead of doing that, he used his peremptory challenges to remove perspective jurors that he had not challenged for cause and he now complains that Juror Crowell was forced upon him. We conclude that the Defendant is not entitled to relief, as this issue was not properly preserved for our review.

-8-

## II. Sufficiency

The Defendant argues that the State did not present sufficient evidence to convict him of three counts of aggravated robbery because the victims testified that it was the first intruder, not the Defendant, who possessed the gun, held them at gunpoint, and directed them to remove their jewelry.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

"Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). "Aggravated robbery is robbery . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon . . . ." Tenn. Code Ann. § 39-13-402(a)(1).

Tennessee Code Annotated section 39-11-402 provides that "[a] person is criminally responsible for an offense committed by the conduct of another if: . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of

the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." This statute codifies the longstanding common law theories of "accessories before the fact and aiders and abettors." Tenn. Code Ann. § 39-11-402, Sentencing Commission Comments. However, criminal responsibility is not itself a separate crime; rather, "[i]t is solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999).

No particular act need be shown, and the defendant need not have played a physical role in the crime in order to be held criminally responsible for the crime. State v. Caldwell, 80 S.W.3d 31, 38 (Tenn. Crim. App. 2002). Rather, to be held criminally responsible for the acts of another, the defendant need only "associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree." State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994).

In the instant case, the proof indicated that the intruder with the gun demanded that all three children remove the jewelry they were wearing. C.C. testified that the man with the gun took items from her brothers, as well as her cellphone, ring, necklace, and pendant. A.C. testified that the man with the gun demanded that he remove his necklace. There was also testimony that the seven-year-old child's bracelet and dragon pendant were taken from him. The proof also showed that the Defendant came into the house while his co-defendant had the three children at gunpoint. The Defendant rummaged through the various rooms in the house and took two video cameras and a fake gun. Moreover, the testimony established that the Defendant had been in the victims' house for their mother's birthday party and, as she had sold several pieces of jewelry to the Defendant's female companion, he had reason to know that the victims' mother sold jewelry. We conclude that the State presented sufficient evidence for a rational trier of fact to find the Defendant guilty of three counts of aggravated robbery beyond a reasonable doubt. The Defendant is not entitled to relief on this issue.

## III. Consecutive Sentences

The trial court ordered that two of the Defendant's convictions for aggravated robbery run consecutively with his conviction for aggravated burglary, for a total effective sentence of twenty-five years. The Defendant argues that the aggregate sentence is contrary to Tennessee's sentencing guidelines and that the trial court erred when it found the Defendant was a dangerous offender.

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the

duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999); see also State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see also Carter, 254 S.W.3d at 344-45.

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); see also Carter, 254 S.W.3d at 343; State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may, in its discretion, order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing. However, the imposition of consecutive sentencing is subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed," that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and that the defendant's "potential for rehabilitation" be considered. Tenn. Code Ann. § 40-35-103(2), (4), (5).

When the trial court imposed consecutive sentences, it found that factors (4) and (6) applied to the Defendant. In this appeal, the Defendant only contests the application of factor (4) and the trial court's finding that he was a dangerous offender.

Regarding the imposition of consecutive sentences because the defendant is a dangerous offender, our supreme court has held, "The proof must also establish that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender." State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995).

When the trial court found that the Defendant was a dangerous offender, it explained as follows:

Even though it was the other defendant who brandished the gun, they both committed this crime together. There is certainly a high risk to human

-12-

life involved when you point a pistol at somebody and rob them at gunpoint. That clearly applies.

The circumstances surrounding the commission of the offense were aggravated. I noted earlier that the helplessness of an elderly victim is a factor that goes to that consideration. In this case the youthfulness and their particularly [sic] vulnerabilities that I described earlier in the [c]ourt's opinion make that out that the circumstances surrounding the commission of the offense were aggravated.

Confinement for extended period of time is necessary to protect society. I do find that.

Aggravated robbery is to me an extremely serious crime. Ranking right up there with just the most serious offenses. In my opinion it should be a 100 percent service and I don't believe it is.

The aggravate [sic] length of the sentences if consecutive is [sic] ordered reasonably relates to the offenses for which the defendant stands convicted. I am going to make that finding.

The Defendant argues that the record does not support the trial court's imposition of consecutive sentences because the trial court's "comments do not materially address either of the two Wilkerson criteria." We disagree. First, we note that the Defendant was on probation for a May 2008 driving under the influence conviction at the time of the instant offenses; that factor alone would be enough to support consecutive sentences under our statutory scheme. Moreover, after discussing the circumstances of the offenses and noting that three children were held at gunpoint while they were robbed and their house was burglarized, the trial court specifically found that consecutive sentences were reasonably related to the severity of the offenses committed and that confinement for an extended period of time was necessary to protect society from further criminal acts by the Defendant. We affirm the trial court's imposition of consecutive sentencing.

Finally, the Defendant argues that his twenty-five-year sentence is more than he deserves for the offenses because he did not possess a weapon, there was no physical injury, and the "robbery/burglary episode was relatively short-lived." We conclude otherwise. The Defendant had been at the victims' house for a birthday party about a month prior to the instant offenses. He also had reason to know that the victims' mother sold jewelry, as she had previously sold multiple pieces to Roseanna, the Defendant's companion. The Defendant entered the house, while his co-defendant had the three children at gunpoint, and

-13-

proceeded to rummage through the house, taking two video cameras and a fake gun. We affirm the sentence imposed by the trial court and conclude that it is no greater than that deserved for the offenses committed. The Defendant is not entitled to relief on this issue.

## IV. Judgment Forms

Upon reviewing the record, we have detected a clerical error on the judgment forms for the Defendant's three aggravated robbery convictions. Aggravated robbery is a Class B felony, see Tennessee Code Annotated section 39-13-402(b), and the trial court properly sentenced the Defendant, as a Range I, standard offender, to terms within the range for a Class B felony, see Tennessee Code Annotated section 40-35-112(a)(2). However, Class "C" is circled on each of the three judgment forms reflecting the offense of aggravated robbery. We remand to the trial court solely for the entry of corrected judgment forms for each of the Defendant's three aggravated robbery convictions.

## Conclusion

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court. We remand solely for the entry of corrected judgment forms for each of the Defendant's convictions for aggravated robbery.

_____
DAVID H. WELLES, JUDGE

-14-