FILED
05/16/2018
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 18, 2018

**STATE OF TENNESSEE v. STEVEN O. SUMMERS, II**

**Appeal from the Circuit Court for Lewis County**
**No. 2015-CR-55    Deanna B. Johnson, Judge**

———————————————

**No. M2017-01030-CCA-R3-CD**

———————————————

A Lewis County jury convicted the Defendant, Steven O. Summers, II, of theft of more than $1,000, and the trial court sentenced him to four years on probation and ordered him to pay restitution to the victim. In this appeal, the Defendant contends that: (1) the trial court erred when it failed to excuse certain members of the jury pool for cause; (2) the evidence is insufficient to support his conviction; and (3) the trial court ordered the Defendant to pay an incorrect amount of restitution and failed to follow the proper procedure when it determined restitution. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Richard Boehms, Hohenwald, Tennessee, for the appellant, Steven O. Summers, II.

Herbert H. Slattery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Kim R. Helper, District Attorney General; Terry E. Wood, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant being hired by a nurse to create a medical computer program for her employer. The nurse paid the Defendant more than $4,000 for his work and did not receive any part of a working computer program in return. For this offense, a Lewis County grand jury indicted the Defendant for theft of more than $1,000.

## A. Voir Dire

During voir dire, the State questioned prospective jurors, and several jurors identified themselves as either being acquainted with the victim or her family in some capacity. Juror Tiller stated that the victim was married to her first cousin and that she considered the victim a friend. She stated that their relationship would not prevent Juror Tiller from evaluating the victim's testimony fairly. Juror Tiller also stated that she considered the victim's current husband a friend but that that would not prevent her from evaluating the case fairly or make her more inclined to believe his or the victim's testimony. Juror Frazier stated that the victim was her second cousin but that would not prevent her from evaluating the victim's testimony fairly; Juror Frazier then stated she was not sure if she would be swayed by their relationship. Juror Templeton stated that she attended church with the victim's children and ex-husband but that their acquaintance would not prevent her from evaluating the case fairly. Juror Grinder stated that the victim had been friends with Juror Grinder's daughter growing up. Juror Price stated that he had worked with the victim at a nursing home in the 1980's, albeit indirectly. He also stated that the victim's husband had hired him to work at a bank in the 1990's. Juror Walton and Juror Carroll stated that they had relationships with the victim's current husband and both considered him a friend; both stated that they could evaluate the case fairly in spite of their relationships. Juror Grinder, Juror Lyell, and Juror Sharp also stated that they knew the victim's husband through business dealings at their bank; all three jurors stated they could evaluate the case fairly. Juror Harris stated that he knew the police officer connected to this case and yet could judge him fairly as a witness; Juror Harris later stated he was uncomfortable serving because he knew "the family" well, although it was unclear of which family he was speaking. Further questioning of all the jurors revealed that, due to the size of their community, virtually all of the jury pool was acquainted with a member of the case in some way.

## B. Trial

The case proceeded to trial, and the parties presented the following evidence: Melody Hankins, the victim, testified that she was a clinical wound specialist employed by American Medical Technologies, a company providing wound care, and also was a licensed nurse. Part of her job was to develop educational programs for her employer's facilities throughout the nation. In late 2010, she began developing a computer program titled "Wound Care A Puzzle," which she intended to use to help diagnose and treat a patient's wounds. She received a patent for the program in 2010 and subsequently looked for a technology company to help her develop it. Through an internet search, she learned

2

of Summers Technology and contacted the owner, the Defendant, whom she later met. At their first meeting in early November of 2010, the Defendant told her that he would be able to make her program "interactive" so it would be easy for a user to understand. He was "excited" to be involved. On a piece of paper marked "Summers Technology," the Defendant wrote out a figure of $4,370 as the cost for him to develop the program. She testified that $2,185 of that total figure was due to the Defendant at the beginning of the project. She stated that the agreement between them was that the Defendant would complete his work on the computer program within eight weeks of their meeting in early November 2010. On approximately November 8, 2010, the victim and the Defendant met with the victim's banker, along with the victim's husband, and the bank loaned the victim $5,000 to develop the computer program. The victim then gave the Defendant a cashier's check.

At the end of 2010 and into 2011, the victim began sending the Defendant information about the program, the patent, and medical information that would be used in the program. The victim purchased copyrighted images from the National Pressure Ulcer Advisory Panel to use in the program and sent them to the Defendant. The victim sent him an outline of the "Wound Care Puzzle" and other related information to be used in the computer program. The victim was at times delayed in sending the Defendant information while she waited for approval or other legal obstacles to be cleared. On January 3, 2011, she sent the Defendant an email saying she had hit a "snag" in her information gathering and would be back in touch with him. The victim testified to various emails she sent the Defendant throughout the time period when she was collecting information; those emails updated him on her progress. The Defendant sent the victim an email on March 7, 2011, asking if she had been able to "put any media together" for the program. The victim responded that she needed a couple more weeks to put the information together.

On April 12, 2011, the victim sent the Defendant an email asking him to "send [her] what we have on the software," and stating that she needed to present it to her company to obtain funding to procure more media for the program. The victim identified "screen shots" of what the Defendant sent her, which showed that he had developed a "puzzle" made up of individual puzzle pieces. She stated that aside from those screen shots she never received anything from the Defendant that was part of a "working" computer program.

After the victim's April 2011 meeting with her company, the victim emailed the Defendant on May 2, 2011, with new pictures to be used in the program; her company had helped her obtain the appropriate copyright for the pictures. On May 13, 2011, the victim emailed the Defendant, with the subject line "progress?," again asking if enough progress

3

had been made on the program to allow her to show it to her company. She stated that the Defendant would get paid regardless of whether her company chose to go forward with finishing the project. On May 14 the Defendant replied that he would "put something together with what little we have." The victim did not hear from the Defendant after the May 14 email, despite her repeated attempts to contact him by telephone. The Defendant contacted the victim in June 2011 and told her he had been in the hospital with a "flesh-eating virus" in his leg. The Defendant asked the victim to send him more money and promised her that he would get back to work on the computer program and complete the project. The victim then transferred $1,000 to the Defendant's bank account from her savings account on June 22, 2011; the wire transfer authorization form was admitted as an exhibit. The Defendant emailed the victim on June 22 and said that the money would allow him to work on the victim's computer program "exclusively" and asked her to "make up more questions and answers" for the program. At this point, the victim felt that she had sent the Defendant so much information that she assumed the program was at least halfway complete; she noted that he had already received two-thirds of his total payment.

In July of 2011, the Defendant called the victim and asked if she could send him the rest of the money he was owed. She testified that he told her that

> he would not work on anything else and that [the victim] would have the program by Friday and easily be able to start selling it online. [The program] would be easily accessible and that if we put it in [an internet search] as a wound care, a puzzle, and put something in front of it, that if anybody Googled anything about wound care, this would be like the first thing that came up.

On July 21, 2011, the victim transferred the remaining amount owed to the Defendant, $1,119. After that, the Defendant "disappeared again." The victim attempted to contact him by email and telephone daily during the first two weeks after the final payment. After a few months she realized she would not get a response. Sometime in 2012, the Defendant contacted her and said he had had some personal issues and apologized. The Defendant offered to reimburse the victim and complete the computer program for free. The victim assented but still never received the computer program and was never reimbursed any of the money she gave the Defendant. She contacted the police in 2013. Her photographs and money were never returned to her, and she learned that the Defendant lost his computer with the photographs and information on it.

On cross-examination, the victim agreed that her original agreement with the Defendant was drawn up on November 5, 2010, and that he agreed to complete the project

4

within eight weeks of that date. She agreed that the eight week time period was not put in writing. The victim stated that the Defendant communicated with her by email multiple times, asking for more content or information to use in the program. She testified that the copyright issues related to the photographs delayed the program's development.

Based upon this evidence, the jury convicted the Defendant of theft of more than $1,000. At the sentencing hearing, the State introduced as exhibits copies of sixteen certified prior convictions, some of which were felonies. The Defendant's pre-sentence report was introduced, listing the Defendant's monthly salary of $1,200, his medical debts of $120,000, probations fines and costs of $2,200, and a savings account balance of $5.00. After considering the evidence presented at trial and at the sentencing hearing, as well as sentencing guidelines and principles, the trial court stated that it applied to the Defendant's sentence, enhancement factor (1), that the Defendant had a long history of criminal convictions, and mitigating factor (1), that the Defendant's criminal conduct in this case neither caused nor threatened serious bodily injury. *See* T.C.A. § 40-35-114(1) and § 40-35-113(1) (2014). The trial court found that the Defendant was a Range I standard offender with a sentencing range of two to four years. In consideration of the purposes of sentencing and the evidence presented, the trial court sentenced the Defendant to four years on probation and ordered him to pay restitution to the victim in the amount of $4,370. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that: (1) the trial court erred when it failed to excuse certain members of the jury pool for cause; (2) the evidence is insufficient to support his conviction; and (3) the trial court ordered the Defendant to pay an incorrect amount of restitution and failed to follow the proper procedure when it ordered restitution. The State responds that: (1) the Defendant has waived the juror issue by failing to provide a complete and accurate record on appeal; (2) the evidence is sufficient for a trier of fact to find the Defendant guilty of theft; and (3) the trial court properly ordered the Defendant to pay restitution based on the evidence available with regard to his financial resources and ability to pay.

### A. Failing to Excuse Potential Jurors for Cause

The Defendant argues that the trial court erred when it failed to dismiss Jurors Tiller, Templeton, Price, Walton, and Carroll for cause because of their varying relationships with the victim and her family. He contends that their statements during voir dire show clear bias. The State responds that the Defendant has waived this argument on

5

appeal because he has failed to provide a complete record. The State contends that the record on appeal does not reflect which party exercised the challenges that lead to the removal of the jurors and does not reflect whether the Defendant used all of his preemptory challenges, which he must show in order to obtain appellate relief.

Rule 24(c)(1) of the Tennessee Rules of Criminal Procedure states that "[a]fter examination of any juror, the judge shall excuse that juror from the trial of the case if the court is of the opinion that there are grounds for challenge for cause." A prospective juror can also be challenged for cause if:

> [t]he prospective juror's exposure to potentially prejudicial information makes the person unacceptable as a juror. The court shall consider both the degree of exposure and the prospective juror's testimony as to his or her state of mind. A prospective juror who states that he or she will be unable to overcome preconceptions is subject to challenge for cause no matter how slight the exposure. If the prospective juror has seen or heard and remembers information that will be developed in the course of trial, or that may be inadmissible but is not so prejudicial as to create a substantial risk that his or her judgment will be affected, the prospective juror's acceptability depends on whether the court believes the testimony as to impartiality. A prospective juror who admits to having formed an opinion about the case is subject to challenge for cause unless the examination shows unequivocally that the prospective juror can be impartial.

Tenn. R. Crim. P. 24(c)(2)(B). "Because mere exposure to extrajudicial information does not automatically disqualify prospective jurors, trial courts must assess whether they can serve fairly and impartially given their knowledge of outside information." *State v. Sexton*, 368 S.W.3d 371, 396 (Tenn. 2012) (citation omitted).

The trial court must assess the level of potential prejudice arising from the extrajudicial information, as well as the believability of the juror's promise to remain impartial. *See State v. Shepherd*, 862 S.W.2d 557, 569 (Tenn. Crim. App. 1992). The trial court's accreditation of the juror's testimony is entitled to the weight of a jury verdict. *State v. Swanson*, 680 S.W.2d 487, 489-90 (Tenn. Crim. App. 1984). A trial court's determination as to the impartiality of a prospective juror can be overturned only if there has been an abuse of discretion. *State v. Kilburn*, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *State v.*

6

*Scott*, 275 S.W.3d 395, 404-05 (Tenn. 2009). In order to prevail on a challenge of this nature, the Defendant must demonstrate not only that a juror should have been removed for cause, but that he had exhausted all of his peremptory challenges. *State v. Howell*, 868 S.W.2d 238, 248 (Tenn. 1993).

We agree with the State that the Defendant has waived this issue on appeal. It is unclear from the record whether the Defendant used all of his allotted peremptory challenges during voir dire and was therefore unable to exercise a peremptory challenge to excuse any of the complained-of jurors. It is the Defendant's obligation to present an accurate and complete record to this court. *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993). Furthermore, none of the jurors expressed any hesitation about their ability to serve as an impartial juror or stated that he or she would be unable to overcome preconceptions about the case participants. The Defendant is not entitled to relief on this issue.

## B. Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support his conviction for theft because his actions rise only to the level of breach of contract and because there was no proof that the Defendant took the victim's money "with the intent to convert the funds into his own use." The State responds that the evidence is sufficient to support a trier of fact's determination that the Defendant obtained control over the victim's money with the intent to deprive her of it without intending to complete the computer program in return.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). "The standard of review [for

sufficiency of the evidence] is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000). A defendant may be convicted on the basis of direct or circumstantial evidence or a combination of both. *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003); *see also State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In fact, circumstantial evidence alone may be sufficient to support a conviction. *State v. Tharpe*, 726 S.W.2d 896, 899-900 (Tenn. 1987).

8

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a) (2014). Consent induced by "deception" means that a person knowingly "[c]reates or reinforces a false impression by words or conduct, including false impressions of fact, law, value or intention or other state of mind that the person does not believe to be true;" or "[p]romises performance that at the time the person knew the person did not have the ability to perform or that the person does not intend to perform or knows will not be performed, except mere failure to perform is insufficient to establish that the person did not intend to perform or knew the promise would not be performed[.]" T.C.A. § 39-11-106(a)(6)(A)(i), (vi)(*a*) (2014).

The evidence, considered in the light most favorable to the State, is sufficient to support the Defendant's conviction. The Defendant knowingly took the victim's money, in several installments, over the course of an approximately six-month period. The Defendant took two of those payments after repeated contact from the victim where she stated she needed some part of a computer program to show her company. The evidence was that, in the time period when the payments were made, the Defendant knew that he was having medical or personal issues that would prevent him from completing the program. A jury could rationally conclude that, based on the entirety of the evidence, the victim's consent to give the Defendant her money was obtained by deception on the part of the Defendant and that he never intended to complete the computer program. The jury could have also concluded that the various emails the Defendant exchanged with the victim were proof of his scheme to defraud her. As such, the evidence is sufficient from which a jury could conclude that he took the money with the intent to deprive the victim of her money and thus committed theft. We reiterate that circumstantial evidence can be sufficient to support a conviction. *See Tharpe*, 726 S.W.2d at 899-900. As such, the Defendant is not entitled to relief on this issue.

## C. Restitution

The Defendant lastly contends that the trial court erred when it ordered him to pay $4,370 in restitution to the victim. He contends that the trial court failed to consider his financial resources or his future ability to pay. He further contends that the restitution amount should have been $2,000, consistent with the amount given to him by the victim during the dates listed on the indictment; the remaining money was given to him prior to those dates and thus he was not found guilty of theft of that amount. The State responds that the trial court considered the available evidence regarding his finances and ability to pay, which was contained in the presentence report that listed his monthly salary and personal debts.

9

A trial court "may direct a defendant to make restitution to the victim of the offense as a condition of probation." T.C.A. § 40-35-304(a) (2014). Restitution is imposed "not only to compensate the victim but also to punish and rehabilitate the guilty." *State v. Johnson*, 968 S.W.2d 883, 885 (Tenn. Crim. App. 1997) (citation omitted). Our standard of review for restitution orders is the abuse of discretion standard with a presumption of reasonableness. *State v. David Allen Bohanon*, No. M2012-02366-CCA-R3-CD, 2013 WL 5777254, at *5 (Tenn. Crim. App., Oct. 25, 2013) (citing *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) and *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012)), *no perm. app. filed*. The defendant bears the burden of demonstrating the impropriety of the sentence. *See* T.C.A. § 40-35-401, Sentencing Comm'n Cmts; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining restitution, a trial court must determine the victim's pecuniary loss, which is defined by statute as:

(1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant, and

(2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.

T.C.A. § 40-35-304(e)(1)-(3). Additionally, "the trial court must consider what the defendant can reasonably pay given the [defendant's] means and future ability to pay." *Johnson*, 968 S.W.2d at 886 (citing T.C.A. §§ 40-35-303(d)(10), -304(d); *State v. Smith*, 898 S.W.2d 742 (Tenn. Crim. App. 1994)).

We discern no error by the trial court in determining the amount of restitution. The trial court ordered the Defendant to pay restitution in the amount of money paid to him by the victim for computer services never delivered. While it would have been preferable for the trial court to make specific findings about the Defendant's ability to pay, the State presented evidence of the value of the contract for services entered into by the Defendant and the victim, as well as the presentence report, which listed the Defendant's salary. Therefore there is sufficient evidence in the record to support the trial court's determination. Accordingly, the Defendant is entitled to no relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgment of the trial court.

_____

ROBERT W. WEDEMEYER, JUDGE