FILED
02/10/2022
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 10, 2021 Session

**STATE OF TENNESSEE v. STEVE LESLIE SMITH**

**Appeal from the Circuit Court for Williamson County**
**No. B-CR190079    Michael W. Binkley, Judge**

_____

**No. M2020-01263-CCA-R3-CD**
_____

A Williamson County jury convicted the Defendant, Steve Leslie Smith, of public intoxication.  The trial court imposed a thirty-day sentence in the county workhouse to be suspended to supervised probation after five days of service.  On appeal, the Defendant argues that the evidence is insufficient to support his conviction, that the trial court erred when it admitted evidence about a substance abuse and psychiatric facility near where the Defendant was arrested, and that the trial court committed plain error when it rejected his challenge for cause of three prospective jurors.  After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR. and J. ROSS DYER, JJ., joined.

Williams L. Pomeroy, Brentwood, Tennessee and Michael Durakiewicz, Franklin, Tennessee (at trial); Greg Burlison, District Public Defender; and Brennan M. Wingerter, Assistant Public Defender – Appellate Director, Franklin, Tennessee (on appeal), for the appellant, Steve Leslie Smith.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Assistant Attorney General; Kim R. Helper, District Attorney General; and Marabeth G. Kennedy and M. James Pulido, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant's being intoxicated in a wooded area adjacent to Murfreesboro Road in Franklin, Tennessee.  The Defendant was shirtless and smelled

strongly of alcohol. He exhibited slurred speech and bloodshot eyes and was uncooperative with law enforcement who responded to the scene. For this event, a Williamson County grand jury indicted the Defendant for public intoxication.

## A. Voir Dire

As relevant to the Defendant's issue on appeal, we summarize a portion of the voir dire phase of his trial. We note that the trial court asked the jury venire whether they could be fair to both sides and use good judgment; none of the potential jurors responded negatively. The trial court questioned the jury venire about any reason that they could not be fair to both sides, given the nature of the public intoxication charge. Venireman Koonce (hereinafter "Juror #1") asked for an aside and told the trial court that he had a number of family members who were alcoholics, giving him "strong" and "conflicted" feelings on the subject of alcoholism. The parties questioned Juror #1 about his feelings, and the State asked whether his views would prevent him from convicting someone of public intoxication if the State had proven the elements of the crime. Juror #1 responded that his views would not prevent him from doing so. The Defendant asked whether Juror #1's experiences with alcoholics would cause him to have a negative opinion about alcoholics, and Juror #1 said that those experiences would not engender a negative opinion.

The trial court again posed the question to the venire about their ability to serve in a manner fair to both sides and whether anyone had a bias that would prevent them from serving impartially. None of the jurors responded. Later during voir dire, the Defendant asked the venire if anyone believed alcohol consumption to be a sin. Venireman Patterson (hereinafter "Juror #2) identified herself, as did Venireman Outland ("Juror #3). Juror #3 identified herself as a "teetotaler" who did not drink, prior to her husband's death, because of religious reasons. She stated that, since his death, she would consume minimal alcohol but had been "against alcohol" the majority of her life. Juror #2 identified herself as a "teetotaler" as well. When asked if anyone identified as having a strict religious upbringing, Juror #3 raised her hand.

Following voir dire, the Defendant challenged Jurors #1, #2, and #3 for cause, arguing that Jurors #2 and #3 identifying themselves as "teetotalers" would "impair their judgment" against the Defendant's case. The Defendant conceded that he had not asked any follow-up questions of those two jurors about whether they would hold against the Defendant their views on alcoholism. The Defendant requested that all three jurors be excused for cause. The trial court denied the request, stating that there were insufficient reasons to excuse them based on their responses to questions during voir dire. The trial court noted that the parties had a full opportunity to engage the jurors on their views, and that none of the jurors had affirmatively stated that they could not serve as impartial jurors. The trial court also declined to reopen the voir dire to allow for more questions. The Defendant used all his remaining preemptory strikes on Jurors #1 and #2, and Juror #3 was empaneled.

# B. Trial

At the Defendant's trial, the parties presented the following evidence: Officer Marc Swain testified that he was employed by the Franklin Police Department. He testified that on September 19, 2018, he responded to a call about an individual who was near Rolling Hills Hospital. The Defendant objected to this reference to the hospital, stating that it was hearsay. The trial court overruled the objection on the grounds that it was not hearsay because it was not being offered for the truth of the matter asserted. A side bar was held during which the Defendant argued that Officer Swain did not have firsthand knowledge of the Defendant's proximity to Rolling Hills Hospital, and the State responded that the Defendant's location was not being offered for the truth of the matter asserted but to establish why the officer responded to the scene. The trial court responded that the evidence was relevant to the officer's investigation and was not hearsay. The Defendant then objected to use of the name of the hospital because of its association with psychiatric patients and addiction treatment, which he argued would in turn cause the jury to think the Defendant had been near the hospital and, therefore, under the influence of an intoxicant. The trial court agreed that the mention of the hospital's name raised an issue of prejudice but stated that the probative value of the evidence outweighed any risk that the jury would imply something detrimental to the Defendant from that information. The trial court noted that the preliminary line of questioning was important and that any detrimental effect could be cured on cross-examination.

In the presence of the jury, Officer Swain described the area around the hospital as wooded, and he said he found the Defendant walking away from a residence on Clovercroft Road and entering the "patch" of woods. Officer Swain followed the Defendant through the woods to the other side of the wooded area and requested that the Defendant stop. The Defendant did not comply at which point Officer Swain began jogging to catch up to the Defendant. Another responding officer issued a command for the Defendant to stop, and he did not comply. Officer Swain said that the Defendant was shirtless and that his pants were wet. Officer Swain noticed that the Defendant's eyes were bloodshot and glossy and that his speech was slurred. Officer Swain took the Defendant into custody at which time he smelled a strong odor of alcohol coming from the Defendant. He recalled that the Defendant was next to a busy road where this occurred.

Officer Swain testified that the Defendant was eventually charged with public intoxication on account of care for the Defendant's safety and his behavior being a public annoyance. Officer Swain testified that officers had to stop the Defendant from wandering into the busy road and that, had he not been detained, the Defendant could have harmed himself or someone else. Footage from Officer Swain's body camera was played for the jury, and it showed Officer Swain following the Defendant and asking to speak with him. The video showed two other officers and the adjacent roadway with vehicle traffic. The video depicts the officers stopping the Defendant from walking into the road and

handcuffing him. Body camera footage from an assisting officer shows the Defendant being placed in an ambulance. The Defendant generally is compliant, but he curses repeatedly at the medical technicians and complains of being thirsty. He tells the medical personnel that he is thirsty enough to "drink [his] piss" and licks the sweat on this body to quench his thirst.

On cross-examination, Officer Swain testified that the occupants of a private residence, located near where the Defendant was found, called the police to report him, allegedly because the Defendant was "knocking on people's doors."

Officer Robert Gibson testified that he was employed by the Franklin Police Department and that he responded to a call "at Rolling Hills Hospital." The Defendant renewed his earlier objection to the mention of the hospital as being hearsay; the trial court overruled the objection on the grounds that it was not being offered for the truth of the mattered asserted. Officer Gibson described the area around the hospital as "fields generally" with an area behind the hospital that was surrounded by a wooden fence adjoining a gated residential community. Officer Gibson recalled responding to the scene and being met by hospital staff who indicated a hole in the wooden fence. Officer Gibson and his colleagues left the hospital to circulate the area and look for the Defendant, whom Officer Gibson identified in the courtroom. Officer Gibson did not personally apprehend the Defendant but came into contact with him as he was being placed into an ambulance. He described the Defendant as disheveled and shirtless, with wet pants, bloodshot eyes, slurred speech, and said he was acting "irritable." He testified that the Defendant was argumentative and uncooperative and used foul language towards the officers. Officer Gibson testified that officers found the Defendant near the intersection of Murfreesboro Road and Clovercroft Road, near a church; he described the intersection as busy with heavy traffic on the roads.

Officer Gibson testified that charging an individual with public intoxication is typical when an individual is too intoxicated to care for their own safety. He stated that this was a concern in the Defendant's case based on his level of intoxication and proximity to the busy highway. Officers did not believe they could leave the Defendant unattended, mainly because of the risk of him being hit by a car, and because of concern for the passing motorists' safety. Officer Gibson stated that the Defendant had damaged the fence at the hospital earlier that night.

Following his detention, the Defendant was transported to the hospital and, after being cleared of medical issues, was taken to the Williamson County Jail. Officer Gibson described the Defendant as becoming more cooperative as time passed, which he attested to the Defendant "sobering up." Officer Gibson explained that the Defendant ultimately was charged with public intoxication because he was unable to care for his own safety, "given his level of intoxication and being around a busy roadway and other residences."

On cross-examination, Officer Gibson agreed that he did not come into contact with the Defendant until he had been apprehended and did not see the Defendant make a hole in the hospital's fence.

Based upon this evidence, the jury convicted the Defendant of public intoxication. The trial court imposed a sentence of thirty days of incarceration suspended to supervised probation after five days of service.

## II. Analysis

On appeal, the Defendant contends that the evidence was insufficient to support his conviction for public intoxication. He further contends that the trial court erred when it admitted testimony about the Rolling Hills Hospital, which he contends was irrelevant, more prejudicial than probative, and inadmissible hearsay. Finally, the Defendant contends that the trial court erred when it overruled his challenges to certain jurors and denied his request to reopen voir dire, and that he is entitled to plain error relief on this issue. The State responds that the evidence was sufficient to support the Defendant's public intoxication conviction. The State further responds that the trial court properly exercised its discretion when it allowed testimony about the hospital which was relevant and not hearsay. Finally, the State contends that the Defendant failed to establish plain error regarding his voir dire issue.

### A. Public Intoxication Conviction

The Defendant specifically contends that the evidence is insufficient to support this conviction because the State did not present proof of any of the three modes of liability – danger to himself, others, or property, or unreasonable annoyance. The Defendant contends that there was too much speculative testimony about whether he was a danger to himself or others to support a guilty verdict. He contends that there was insufficient evidence of his intoxication rising to the level of putting himself or others in danger. He also contends that there was no evidence of him being an annoyance. The State responds that, viewing the evidence in the light most favorable to the State, a rational juror could have concluded that the Defendant was so intoxicated that he posed a danger to himself, others, or property. The State concedes that there was not sufficient evidence of him being an unreasonable annoyance but states that such a showing was not required to sustain his conviction as the State proved that he was a danger to himself and others. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d

247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus[,] the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

(a) A person commits the offense of public intoxication who appears in a public place under the influence of a controlled substance, controlled substance analogue or any other intoxicating substance to the degree that:

(1) The offender may be endangered;
(2) There is endangerment to other persons or property; or
(3) The offender unreasonably annoys people in the vicinity.

T.C.A. § 39-17-310 (2018).

The evidence presented, viewed in the light most favorable to the State, was that the Defendant was found near residences and a busy intersection with impaired speech and balance. His whereabouts were reported by a nearby resident with whom he had tried to make contact at their home. In addition to being impaired, the Defendant smelled of alcohol and had bloodshot eyes. He failed to respond to officers' requests to stop and became belligerent when they attempted to detain him. Body camera footage showed the Defendant cursing at medical and law enforcement personnel and generally acting in a belligerent and combative manner. The Defendant was detained next to a busy intersection and body camera footage showed him attempting to step into the roadway as cars sped by. This is sufficient evidence from which a jury could conclude that the Defendant was intoxicated in a public place to the point of being a danger to himself or others. The Defendant is not entitled to relief on this issue.

## B. Rolling Hills Hospital Testimony

The Defendant contends that the trial court erred when it allowed several witnesses to testify, over his objection, to the Defendant's whereabouts near Rolling Hills Hospital. He contends that mention of the hospital, a substance abuse and psychiatric facility, was hearsay. The State responds that the trial court did not abuse its discretion when it overruled the Defendant's objections because the testimony was relevant and not hearsay. We agree with the State.

The admissibility of evidence rests within the sound discretion of the trial court, and this court does not interfere with the exercise of that discretion unless a clear abuse appears on the face of the record. *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010). The Tennessee Rules of Evidence provide that all "relevant evidence is admissible," unless excluded by other evidentiary rules or applicable authority. Tenn. R. Evid. 402. Of course, "[e]vidence which is not relevant is not admissible." *Id.* Relevant evidence is defined as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Even relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of

the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Tenn. R. Evid. 801(c). Hearsay is not admissible unless admission is authorized by the evidence rules or by other controlling provisions of law. *Id.* at 802.

Officers Swain and Gibson both testified that they received calls or information that the Defendant was wandering around a wooded area near Rolling Hills Hospital. The trial court determined that this evidence was relevant, after properly considering whether it was inadmissible hearsay and then considering the probative value of this description and weighing it against any risk of prejudice to the Defendant. These narrative statements were relevant to show how and under what circumstances the officers came into contact with the Defendant, as well as the public place where they found him. Their testimony was not being offered for the truth of the matter asserted and was not hearsay. There was no abuse of discretion in admitting this evidence, and the Defendant is not entitled to relief.

### C. Voir Dire

The Defendant lastly contends that the trial court erred when it denied the Defendant's motion to strike three jurors for cause, and when it declined to reopen voir dire. The Defendant concedes that the issue was not raised at trial but asserts that he is entitled to plain error relief. He argues that a clear and unequivocal rule of law was breached because the jury was not impartial. The State responds that the Defendant is not entitled to plain error relief. The State contends that because two of the jurors, #1 and #2, did not serve, any error that the trial court committed does not entitle the Defendant to relief. The State further contends that the one juror who served, Juror #3, did not make any statements about her inability to be impartial and voiced no concern about whether she could serve as a fair and impartial juror. The State further responds that the trial court properly declined, within the broad discretion afforded to it, to reopen voir dire. The State thusly argues that the Defendant has failed to carry his burden of showing that his right to an impartial jury was adversely affected or violated and therefore is not entitled to plain error relief. We agree with the State.

Full appellate review of this issue is waived because the Defendant failed to raise the issue in his motion for new trial. *See* Tenn. R. App. P. 3(e) (treating issues "upon which a new trial is sought" as waived "unless the same was specifically stated in a motion for a new trial"); *see also State v. Harbison*, 539 S.W.3d 149, 164 (Tenn. 2018) (citations omitted). Therefore, we review this issue solely to determine if plain error review is warranted.

The doctrine of plain error applies when all five of the following factors have been established:

(a) the record must clearly establish what occurred in the trial court;
(b) a clear and unequivocal rule of law must have been breached;
(c) a substantial right of the accused must have been adversely affected;
(d) the accused must not have waived the issue for tactical reasons; and
(e) consideration of the error must be "necessary to do substantial justice."

*State v. Page*, 184 S.W.3d 223, 230-31 (Tenn. 2006) (quoting *State v. Terry*, 118 S.W.3d 355, 360 (Tenn. 2003)) (internal brackets omitted). "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *Id.* at 231.

"The manner in which voir dire is conducted rests within the sound discretion of the trial court." *See State v. Sexton*, 368 S.W.3d 371, 390 (Tenn. 2012) (*citing State v. Howell*, 868 S.W.2d 238, 247 (Tenn.1993)). Rule 24(c)(1) of the Tennessee Rules of Criminal Procedure states that "[a]fter examination of any juror, the judge shall excuse that juror from the trial of the case if the court is of the opinion that there are grounds for challenge for cause." A prospective juror can also be challenged for cause if:

[t]he prospective juror's exposure to potentially prejudicial information makes the person unacceptable as a juror. The court shall consider both the degree of exposure and the prospective juror's testimony as to his or her state of mind. A prospective juror who states that he or she will be unable to overcome preconceptions is subject to challenge for cause no matter how slight the exposure. If the prospective juror has seen or heard and remembers information that will be developed in the course of trial, or that may be inadmissible but is not so prejudicial as to create a substantial risk that his or her judgment will be affected, the prospective juror's acceptability depends on whether the court believes the testimony as to impartiality. A prospective juror who admits to having formed an opinion about the case is subject to challenge for cause unless the examination shows unequivocally that the prospective juror can be impartial.

Tenn. R. Crim. P. 24(c)(2)(B). The trial court must assess the level of potential prejudice arising from the extrajudicial information, as well as the believability of the juror's promise to remain impartial. *See State v. Shepherd*, 862 S.W.2d 557, 569 (Tenn. Crim. App. 1992). The trial court's accreditation of the juror's testimony is entitled to the weight of a jury verdict. *State v. Swanson*, 680 S.W.2d 487, 489-90 (Tenn. Crim. App. 1984). A trial court's determination as to the impartiality of a prospective juror can be overturned only if there has been an abuse of discretion. *State v. Kilburn*, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *State v.*

*Scott*, 275 S.W.3d 395, 404-05 (Tenn. 2009). In order to prevail on a challenge of this nature, the defendant must demonstrate not only that a juror should have been removed for cause, but that he had exhausted all of his peremptory challenges. *See Howell*, 868 S.W.2d at 248.

We agree with the State that the Defendant is not entitled to plain error relief because he has not carried his burden of showing that there was a clear and unequivocal breach of a rule of law. None of the jurors expressed any hesitation about their ability to serve as an impartial juror or stated that he or she would be unable to overcome preconceptions about the facts of the case. Juror #3 expressed certain views, past or present, about alcohol use but never said that her views would affect her impartial participation on the jury. Accordingly, the Defendant has not shown that his right to an impartial jury was violated. Furthermore, as we noted, the trial court is entitled to broad discretion as to how to conduct voir dire, and the Defendant has not shown that the decision not to reopen voir dire was an abuse of discretion. As such, we conclude that he is not entitled to plain error relief on this issue.

## III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE